IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS R. SCHWIETERMAN, | ) | CASE NO. 3:11CV1203 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| KEVIN SMITH, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Nicholas R. Schwieterman ("Petitioner" or "Schwieterman"), filed a petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 10, 2011.  Doc. 1.  Schwieterman

challenges the constitutionality of his conviction and sentence in *State v. Schwieterman*, Case

No. 08-CRM-022 (Mercer Cty. 2008).  This matter has been referred to the undersigned

Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  For the

following reasons, Schwieterman's petition for writ of habeas corpus should be DENIED.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  The petitioner has the

burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).

The Ohio Third District Court of Appeals summarized the facts underlying Schwieterman's

conviction as follows:

> [*P1] The defendant-appellant, Nicholas Schwieterman, appeals the judgment of
> the Mercer County Common Pleas Court sentencing him to an aggregate prison
> term of 24 years. On appeal, Schwieterman contends that his sentence violates the
> Eighth Amendment protection against cruel and unusual punishment, and that the
> trial court erred by imposing consecutive and non-minimum sentences. For the
> reasons set forth herein, the judgment of the trial court is affirmed.

[*P2] The parties have stipulated to the following facts:

On or about March 15, 2008, at approximately 2:15 a.m. Deputies from the Mercer County Sheriff's Office were dispatched to an injury collision at the intersection of County Road 716A and Brockman Road in Mercer County, Ohio. When they arrived on scene, they observed a grey Pontiac Bonneville off the road in the northwest corner of the intersection. It was severely damaged and the rear end of the vehicle had collided with the utility pole located in the field at the northwest corner of the intersection. They further observed a red Pontiac Grand Prix in a field further northwest of the grey Bonneville. The red Pontiac Grand Prix was also severely damaged. The investigation revealed that the 1996 Pontiac Bonneville was traveling westbound on Brockman Road when it failed to yield the right-of-way and/or stop for the stop sign that controls the intersection of 716A and Brockman Roads. The Bonneville collided with the red 1995 Pontiac Grand Prix which had been traveling northbound on County Road 716A at the time of the collision. The Pontiac Grand Prix was being operated by Jordan Moeller and passengers in the vehicle were Jordan Diller, Bradley Roeckner and Jordan Goettemoeller. All four occupants in the Pontiac Grand Prix died as a proximate result of the collision.

Deputies approached two male individuals identified as Nicholas Schwieterman and Kyle Schmitmeyer. They both had blood shot eyes and strong odors of alcohol on or about their persons, also Nicholas Schwieterman['s] speech was slurred and he was hard to understand. They both initially denied they were driving the Bonneville, they were both read Miranda rights and were both transported to Coldwater Community Hospital/Mercer Health. Upon questioning Schwieterman at the hospital he admitted he was the driver of the motor vehicle and Schmitmeyer also identified Schwieterman as the driver. Schwieterman consented to a blood draw and urine sample after being read the BMV 2255 form. The blood sample was submitted to the Ohio State University Medical Center Clinical Laboratories for forensic testing on March 15, 2008. Mr. Schwieterman was arrested for Aggravated Vehicular Homicide and transported to the Mercer County Jail.

The Ohio State University Medical Center Clinical Laboratories completed [its] analysis of the blood sample and conclude[d] that Mr. Schwieterman had a concentration of one hundred thirty-four thousands (0.134) of one percent by weight per unit volume of alcohol in Schwieterman's whole blood.

> The Ohio State University Medical Center Clinical Laboratories completed [its] analysis of the urine sample collected from Mr. Schwieterman after the crash. The test concluded the Defendant possessed 7990 ng/ml of Cocaine in his urine. The test also concluded that the Defendant possessed 48 ng/ml of THC in his urine.

Stipulation of Facts on No Contest Plea, Oct. 9, 2008.

[*P3] On April 7, 2008, the Mercer County Grand Jury indicted Schwieterman on the following charges: four counts of involuntary manslaughter, violations of R.C. 2903.04(A), first-degree felonies; one count of possession of drugs, a violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony; four counts of aggravated vehicular homicide, violations of R.C. 2903.06(A)(1)(a), (B)(1)(2)(a), second-degree felonies; one count of operating a motor vehicle while under the influence of alcohol or drugs of abuse, a violation of R.C. 4511.19(A)(1)(a), (G)(1)(a)(i), a first-degree misdemeanor; one count of operating a motor vehicle while under the influence of alcohol or drugs of abuse, a violation of R.C. 4511.19(A)(1)(b), (G)(1)(a)(i), a first-degree misdemeanor; four counts of aggravated vehicular homicide, violations of R.C. 2903.06(A)(2)(a), (B)(1)(3), third-degree felonies; and one count of trafficking in drugs, a violation of R.C. 2925.03(A)(1), (C)(4)(a), a fifth-degree felony.[1] At arraignment on April 10, 2008, Schwieterman pled not guilty to each charge.

---------- footnote ------------
[1] Schwieterman had previously been indicted by the Mercer County Grand Jury on ten counts in Mercer County Common Pleas Court case number 08-CRM-016. The indictment in that case was dismissed following the state's receipt of toxicology results, which indicated the presence of cocaine and marijuana in Schwieterman's blood and urine on the morning of March 15, 2008. A special session of the grand jury was conducted, and the above referenced indictment was filed in Mercer County Common Pleas Court case number 2008-CRM-022, which is before us on appeal.
------------end footnote------------

[*P4] On May 5, 2008, Schwieterman filed a motion to suppress evidence. The state filed a response, and both parties filed post-hearing memoranda. On July 16, 2008, the court denied the motion. The state filed a motion for change of venue on July 31, 2008, which Schwieterman moved to strike on August 8, 2008. The court granted Schwieterman's motion to strike on August 11, 2008.

[*P5] On October 9, 2008, a waiver of constitutional rights prior to entering pleas of no contest, which Schwieterman had signed, was filed. The parties filed the stipulation of facts on no contest plea, which was quoted above, and a written negotiated plea agreement was filed. Schwieterman pled no contest to four counts of involuntary manslaughter, one count of possession of drugs, and one count of

operating a motor vehicle while under the influence of alcohol or drugs of abuse ("OMVI"). The state agreed to, and did, dismiss the remaining counts of the indictment. On October 20, 2008, the court filed its judgment entry finding Schwieterman guilty on the charges to which he had pled no contest.

[*P6] Schwieterman filed a sentencing memorandum on November 10, 2008, and on November 12, 2008, the trial court held a sentencing hearing. Based solely on the pre-sentence investigation report, the court made preliminary determinations under R.C. 2929.12 that the victims and their families had suffered serious physical and psychological harm; that Schwieterman had been adjudicated delinquent as a juvenile; and that Schwieterman showed genuine remorse. Schwieterman presented testimony from Roberta Donovan, a mental health counselor at Foundations Behavioral Health Services, his life-long friend, Sarah Hein, and his father, Robert Schwieterman.

[*P7] Donovan testified that Schwieterman was on suicide watch at the Mercer County Jail when she had her first correspondence with him. At that time, "some of the first comments out of his mouth were 'Oh, my God' which he repeatedly said. He also made comments of 'just shoot me.' 'Someone get rid of me.' 'I am going to have a heart attack.' 'I am fucking dead' and 'I'm going to be all by myself for a long time.' 'Get rid of me. I will pay you.'" Sentencing Tr., Jan. 2, 2009, at 9:19-24. Donovan stated that Schwieterman was crying and scared, and she observed that his emotions were "heartfelt." Id. at 10. Donovan stated that she continued to provide counseling services to Schwieterman after he was released on bond, and he had never missed a session with her. Id. at 12. Schwieterman told Donovan that he wanted to apologize to the victims' families, and he wanted to schedule speaking engagements to tell others his story and about the victims. Id. at 14. Donovan stated that she found Schwieterman to be different from her typical clients because he openly shared his feelings with her. Id. at 15. She also believed that Schwieterman's expressed feelings were genuine; that his feelings were for the victims and not self-pity; and that he could benefit the community because he was willing to accept the consequences of his actions and was willing to try to make a difference. Id. at 14-15.

[*P8] On cross-examination, Donovan testified about Schwieterman's alcohol and drug abuse. Schwieterman reported that he began drinking alcohol at age 15, using marijuana at age 20, and using cocaine during his senior year of high school. Id. at 21-22. Schwieterman later told her that his drug habits formed in the following order: alcohol, nicotine, marijuana, and cocaine. Id. at 23.[2] Schwieterman disclosed that he would drink alcohol on Thursday nights and during the weekends; that he used marijuana once per week; and that he used cocaine once per month. Id.

----------footnote----------
[2] The pre-sentence investigation report supported the latter statement. However, alcohol abuse began at age 15, and drug abuse began while Schwieterman was in high school.
----------end footnote----------

[*P9] The next defense witness was Sarah Hein, Schwieterman's life-long friend and neighbor. Hein testified that she and Schwieterman were close to each other and described a sibling-like relationship. Id. at 27. Hein told the court that Schwieterman was very hurt by the collision and would trade places with any of the victims if he could. Id. at 29. Hein testified that Schwieterman cried about the collision, and she believed that his tears were for the victims and not out of self-pity. Id. Hein also indicated Schwieterman's desire to make presentations after he had served his sentence. Id. at 30. On cross-examination, Hein testified that she had seen Schwieterman and his family praying for the victims and their families, and that she had been surprised when she learned the frequency of his drug use. Id. at 36.

[*P10] Finally, Schwieterman's father, Robert, testified that he had been aware of his son's "partying." Id. at 44. Robert had known that Schwieterman worked when it was time to work and partied when it was time to party. Id. Robert stated that he had never talked to Schwieterman about underage drinking because his father had never talked about it with him and because "it's the social system in this area." Id. at 45. Robert discussed his son's emotional state since the collision, indicating that Schwieterman had been inconsolable and wished he could have been the one to die instead of the victims. Id. at 49.

[*P11] On cross-examination, Robert admitted he had been aware of Schwieterman's juvenile adjudication, which was for an alcohol-related offense, and he had also been aware of Schwieterman's conviction for criminal damaging. Id. at 51. However, Robert indicated that Schwieterman's juvenile adjudication made him more secretive about his alcohol use, and he downplayed the facts of the misdemeanor conviction while demonstrating that Schwieterman had accepted responsibility for the act, had served his sentence, had been offered a job upon his completion of community service. Id. Robert believed his son's remorse to be genuine. Id. Robert testified that Schwieterman was always concerned about his appearance and only wore pressed shirts. Id. at 53. He also stated that he had not been aware of Schwieterman's drug usage, and that Schwieterman had been able to keep his drug use a secret from the entire family. Id. at 46; 54.

[*P12] Defense counsel then spoke on Schwieterman's behalf. Counsel asked the victims' families to forgive Schwieterman for his failure to apologize earlier. Counsel indicated that Schwieterman had wanted to apologize to the victims' families since the collision, but he had not done so on counsel's advice. Counsel also expressed concern that the community had a serious alcohol and drug abuse problem. Counsel stated that he was shocked to learn how common alcohol abuse

5

was in the community; that bars were openly serving alcohol to people under the age of 21; and that the community seemed to view drinking and driving as an acceptable practice. Counsel noted that the community had been supportive of Schwieterman until the toxicology reports had been released and revealed Schwieterman's cocaine use. Counsel noted Schwieterman's genuine remorse for the collision, and his desire to begin speaking engagements.

[*P13] Counsel requested that the court impose a prison term of between eight and twelve years. Counsel told the court that a harsh sentence would simply send Schwieterman to prison, and the community would forget him. However, if the court was reasonable in sentencing, Schwieterman would be able to return to the community and be scorned by residents who would recognize him and remember the crimes he had committed. A more reasonable sentence would serve as a "wake up call" to the young people of the community that alcohol abuse and drinking and driving are not acceptable.

[*P14] Schwieterman also made a statement in which he first said that he had made the worst decision of his life on March 15, 2008. Schwieterman apologized to the families and indicated that "[n]ot a day will go by the rest of my life that I don't think of those four boys and the great lives that were taken that night." Id. at 67. *Schwieterman stated that his "decision to get behind the wheel while under the influence was, you know, a horrible, horrible mistake."* Id. at 68. Schwieterman told the court that a day will never pass that he does not think about the victims, and he hoped that one day he would be able to give presentations that might prevent even one person from making the same decisions he had made. Id. Schwieterman ended his statement by asking that the victims' families some day find peace and forgive him.  Id. at 68-69.

[*P15] Representatives from each of the victims' families were given the opportunity to speak. Their readings were emotional and described the effects of losing their children in such an abrupt manner. Several parents described their dead sons' bodies at the hospital following the collision and how they had held their sons' bodies for hours. One of the fathers described having been dispatched to the scene of the collision as a first-responder and being apprehended by his colleagues to prevent him from finding his deceased son in the wreckage. Several siblings testified about their losses, and parents talked about how other siblings had been affected; several smaller children waking with nightmares and other small children sleeping in their deceased brother's bed each night.

[*P16] Finally, the assistant prosecutor spoke on behalf of the state of Ohio and requested a "lengthy and significant sentence." Id. at 122. The state addressed Ohio's sentencing statutes, and focused on Schwieterman's concern with appearances, his ability to hide drug use from his family and Hein, and his lack of remorse. The state noted Schwieterman's statements, which had been recorded when he was transported by law enforcement from the hospital to the county jail and which were played during the hearing. In particular, the state focused on

Schwieterman's statements about his life being over and his asking law
enforcement to end his life. Id. at 114. The state believed that, contrary to other
witnesses' opinions, such statements demonstrated self-pity rather than concern
for the victims and their families.

[*P17] After a short recess, the court proceeded to sentence Schwieterman to four,
consecutive six-year prison terms for the involuntary manslaughter convictions.
The court also imposed a one-year prison term for the possession of drugs
conviction and six months in the county jail for the OMVI conviction. The court
ordered those sentences to be served concurrently with the sentences imposed for
the involuntary manslaughter convictions for an aggregate prison term of 24
years. The court filed its judgment entry of sentence on November 14, 2008.

Doc. 7, Exhibit 18, *State v. Schwieterman*, Case No. 10-08-17 ("*Schwieterman I*") (citing

Exhibits 2-12).

## II.  Post-Sentence Procedural History

### A.     Direct Appeal

On December 8, 2008, Schwieterman, with the assistance of new counsel Joseph

Benavidez, filed a timely notice of appeal in the Third District Court of Appeals from the

judgment of conviction and sentencing.  Doc. 7, Exhibit 13.  Then, on March 4, 2009,

Schwieterman, through new counsel John Poppe and Eric Allen, filed his appellate brief, in

which he raised the following two assignments of error concerning his sentencing:

1.  The trial court violated appellant's Eighth Amendment, made applicable to the
    states by the Fourteenth Amendment right against cruel and unusual
    punishment by sentencing him to a term of twenty four years in prison.

2.  The trial court erred in imposing consecutive/non minimum sentences on
    appellant.

Doc. 7, Exhibit 15.  The State filed a brief on March 24, 2009 opposing Schwieterman's

assignments of error.  Doc. 7, Exhibit 16.  On April 2, 2009, Schwieterman's counsel filed a

reply brief.  Doc. 7, Exhibit 17.  On May 18, 2009, the court of appeals affirmed the judgment of

the trial court.  Doc. 7, Exhibit 18.

On July 2, 2009, Schwieterman, through counsel Allen, filed a timely notice of appeal to the Ohio Supreme Court.  Doc. 7, Exhibit 19.  In his memorandum in support of jurisdiction, Schwieterman raised the same two arguments as propositions of law that he raised before the court of appeals:

1. The trial court violated appellant's Eighth Amendment, made applicable to the states by the Fourteenth Amendment right against cruel and unusual punishment by sentencing him to a term of twenty four years in prison.

2. The trial court erred in imposing consecutive / non minimum sentences on the appellant.

Doc., 7, Exhibit 20.  The State filed a memorandum in response on August 9, 2009.  Doc. 7, Exhibit 21.  On October 14, 2009, the Ohio Supreme Court declined to exercise jurisdiction and dismissed the appeal as not involving any substantial constitutional question.  Doc. 7, Exhibit 22.

## B.    State Petition for Post-Conviction Relief

Meanwhile, on May 7, 2009, while his direct appeal was still pending, Schwieterman, through the same counsel representing him on direct appeal (attorneys Allen and Poppe) filed a petition for post-conviction relief in the trial court pursuant to Ohio Rev. Code § 2953.21 et seq. Doc. 7, Exhibit 23.  Schwieterman asserted the following six claims in his petition:

1. Petitioner was denied due process pursuant to the Fifth Amendment to the Federal Constitution made applicable to the states via the Fourteenth Amendment due to the State of Ohio failing to fully investigate this matter.

2. Petitioner was denied due process pursuant to the Fifth Amendment to the Federal Constitution made applicable to the states via the Fourteenth Amendment when the State of Ohio destroyed exculpatory evidence, the air bag sensors attached to the 1995 Grand Prix.

3. Petitioner was denied due process by the misconduct of the Mercer County Prosecutor's Office.

4. Petitioner was denied effective assistance of counsel guaranteed by the Sixth Amanemdnet [sic] made applicable to the states via the Fourteenth Amendment for failing to properly investigate the government's allegations of

8

how this accident occurred.

5. Petitioner was denied effective assistance of counsel guaranteed under the Sixth Amendment to the Federal Constitution made applicable to the states via the Fourteenth Amendment for failing to give sound advice regarding the plea agreement.

6. Petitioner's incarceration is a violation of the Eighth and Fourteenth Amendments to the Federal Constitution based upon his actual innocence of the crime for which he plead no contest.

Doc. 7, Exhibit 23.  The state opposed the petition on May 18, 2009.  Doc. 7, Exhibit 24.  On July 23, 2009, the trial court, without having conducted an evidentiary hearing, denied the Schwieterman's petition for post-conviction relief.  Doc. 7, Exhibit 25.

On August 11, 2009, Schwieterman, through attorney Allen, filed a notice of appeal in the Third District Court of Appeals from the denial of his petition for post-conviction relief. Doc. 7, Exhibit 26.  Schwieterman filed his brief on September 23, 2009, in which he presented the following five assignments of error:

1. The trial court erred in denying the post conviction petition without holding an evidentiary hearing.

2. The trial court erred in making a specific finding that the government did not violate his right to due process guaranteed by the Fifth Amendment to the Federal Constitution made applicable to the states by the Fourteenth Amendment by destroying potentially exculpatory evidence.

3. The trial court erred in making a specific finding that the prosecutor had not engaged in misconduct.

4. The trial court erred in specifically finding that trial counsel was effective pursuant to the Sixth Amendment of the Federal Constitution made applicable to the states by the Fourteenth Amendment.

5. The trial court erred in specifically finding that the appellant is not actually innocent of the crime for which he plead no contest.

Doc. 7, Exhibit 28.  On October 26, 2009, the State filed a (corrected) brief.  Doc. 7, Exhibit 29.

On January 21, 2010, the court of appeals affirmed the trial court's judgment, specifically

finding that the claims presented in the petition were barred by res judicata, and otherwise did

not demonstrate grounds for relief.  Doc. 7, Exhibit 31, *State v. Schwieterman*, Case No. 10-09-

12 ("*Schwieterman II*").

On February 8, 2010, Schwieterman, through counsel, filed a motion for reconsideration

with the court of appeals.  Doc. 7, Exhibit 32.  The State filed an opposition to the motion for

reconsideration on February 18, 2010 (Doc. 7, Exhibit 33) and Schwieterman filed a reply brief

on February 26, 2010.  Doc. 7, Exhibit 34.  On March 11, 2010, the court of appeals denied the

motion for reconsideration, finding that it was untimely because it was not filed with the ten-day

time period under Rule 26 of the Ohio Rules of Appellate Procedure.  Doc. 7, Exhibit 35.

On March 8, 2010, Schwieterman, through attorney Allen, filed a timely notice of appeal

to the Ohio Supreme Court.  Doc. 7, Exhibit 36.  Schwieterman presented the following five

propositions of law in his memorandum in support of jurisdiction:

1. An appellate court cannot, sua sponte, raise an affirmative defense for a party
   to a civil action including post conviction proceedings.

2. The trial court and the court of appeals erred in making a specific finding that
   the government did not violate his right to due process guaranteed by the Fifth
   Amendment to the Federal Constitution made applicable to the states by the
   Fourteenth Amendment by destroying potentially exculpatory evidence.

3. The trial court and the court of appeals erred in making a specific finding that
   the prosecutor had not engaged in misconduct.

4. The trial court and the court of appeals erred in specifically finding that trial
   counsel was effective pursuant to the Sixth Amendment of the Federal
   Constitution made applicable to the states by the Fourteenth Amendment.

5. The trial court erred in denying the post conviction petition without holding an
   evidentiary hearing.

10

Doc. 7, Exhibit 37.  The State filed its response on April 7, 2010.  Doc. 7, Exhibit 38.  On June 9, 2010, the Ohio Supreme Court declined to exercise jurisdiction over Schwieterman's case and dismissed the appeal as not involving any substantial constitutional question.  Doc. 7, Exhibit 39.

On September 3, 2010, Schwieterman, through attorney Allen, filed a timely petition for certiorari with the United States Supreme Court.  Doc. 7, Exhibit 40, Docket in Case No. USSC 10-6298.  On November 8, 2010, the Supreme Court denied the petition for writ of certiorari.  *Id.*

**C.**     **Federal Habeas Corpus**

On June 10, 2011, Schwieterman, through attorney Allen, filed a petition for writ of habeas corpus.  Doc. 1.  In his petition, Schwieterman asserts the following four grounds for relief:

> **GROUND ONE:**  The Trial Court violated Petitioner's Eighth Amendment, made applicable to the States by the Fourtheenth [sic] Amendment right against cruel and unusual punishment by sentencing him to a term of twenty four years in prison.

> **GROUND TWO:**  The State of Ohio violated Pettitioner's [sic] right to Due Process guaranteed by the Fifth Amendment to the Federal Constituition [sic] made applicable to the states by the Fourteenth Amendment by destroying potentially exculpatory evidence.

> **GROUND THREE:**  The State of Ohio via the Mercer County Prosecutor had engaged in misconduct.

> **GROUND FOUR:**  Trial counsel did not provide effective assistance of counosel [sic] pursuant to the Sixth Amendment of the Federal Constitution made applicable to the states by the Fourteenth Amendment.

Doc. 1, pp. 9-20.  On September 30, 2011, Respondent filed an Answer/Return of Writ.  Doc. 7. On January 2, 2012, Schwieterman filed his Traverse.  Doc. 10.

### III.  No Contest Plea/Waiver of Alleged Constitutional Violations

Respondent contends that federal habeas corpus review of claims raised by a state prisoner who has entered a plea of guilty or no contest is limited to the issue of whether the plea

was knowingly and voluntarily made.  Doc. 7, p. 19.  Respondent thus argues that Schwieterman has waived all of the claims he has asserted in his habeas petition because he does not challenge whether his no contest plea was knowingly, voluntarily and intelligently made.

It is well-established that a voluntary and intelligent guilty plea forecloses federal habeas corpus review of allegations of antecedent constitutional deprivations.  *Tollett v. Henderson*, 411 U.S. 258, 266-67, 93 S.Ct. 1602, 1607-08, 36 L.Ed.2d 235 (1973) ("The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity."); s*ee also Mabry v. Johnson,* 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-47, 81 L.Ed.2d 437 (1984) ("[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (valid guilty plea barred review of claim of impermissible burden on right to jury); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (review of allegations of coerced confessions foreclosed); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) (same); *Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985).  As the Supreme Court explained in *Tollett,*

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea[.]

*Tollett,* 411 U.S. 258, 267.  A defendant's guilty plea, therefore, "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt." *Menna v. New York,* 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975).  This principle applies equally to no contest pleas.  *See U.S. v. Frankfort Distilleries*, 324 U.S. 293, 65 S. Ct.

661, 89 L. Ed. 951 (1945) (A guilty or nolo contendere (no contest) plea waives all defects in the indictment or information that are not jurisdictional); *see also Ortberg v. Moody,* 961 F.2d 135, 137–38 (9th Cir. 1992) (holding that the petitioner's nolo contendere plea precluded him from challenging alleged constitutional violations that occurred prior to the entry of the plea).

Since *Tollett,* the Supreme Court has recognized that the bar on attacking pre-plea constitutional errors does not apply when the defect in question is a "jurisdictional" one that implicates the government's power to prosecute the defendant.  *See United States v. Broce,* 488 U.S. 563, 574–76, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)); *see also Menna,* 423 U.S. at 62 (holding that the bar on collateral challenges to pre-plea errors did not apply to a claim that the indictment under which a defendant pleaded guilty placed him in double jeopardy); *Blackledge v. Perry,* 417 U.S. 21, 30–31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (holding that a guilty plea did not foreclose a claim that a defendant was vindictively prosecuted).

In this case, Schwieterman pled no contest to four counts of involuntary manslaughter, one count of possession of drugs, and one count of OMVI, which conclusively established his guilt of those offenses.  Schwieterman does not challenge whether his plea was knowingly, voluntarily and intelligently made.  In fact, Schwieterman has never challenged the validity of his plea in any state court proceeding.  Schwieterman has therefore waived all non-jurisdictional constitutional challenges based on events that occurred before he entered the plea.  *See Tollett*, 411 U.S. at 267.

With regard to his specific claims, in Ground One, Schwieterman asserts that his sentence of 24 years violates the Eighth Amendment's prohibition against cruel and unusual punishment. Doc. 1, pp. 9-11.  This claim relates to the sentence imposed by the trial court and the alleged constitutional violation occurred after Schwieterman entered his no contest plea.  Therefore, this

13

claim was not waived by Schwieterman's no contest plea.  *Cf. Sharp v. Warden, Pickaway Correctional Inst.,* No. 1:10–cv–831, 2011 WL 6960850, at *19 (S.D. Ohio Dec, 12, 2011) (noting that, because petitioner had pled guilty, the only claims he arguably could have raised would have been those attacking the validity of his guilty plea and the sentence that was imposed).  Ground One will therefore be addressed on the merits.

In Grounds Two and Three, Schwieterman asserts that his constitutional rights were violated because of pre-plea errors.  Specifically, in Ground Two, Schwieterman alleges that his right to due process was violated because the state destroyed exculpatory evidence (Doc. 1, pp. 11-13) and, in Ground Three, he asserts that his constitutional rights were violated due to prosecutorial misconduct.  Doc. 1, pp. 14-16.  These claims relate to purported deprivations of constitutional rights occurring before Schwieterman entered his no contest plea.  Thus, Schwieterman has waived these grounds for relief by entering his plea.

In Ground Four, Schwieterman alleges that his trial counsel was ineffective for the following reasons: (1) counsel failed to investigate how the accident occurred, and (2) the plea agreement contained an absolute waiver of any constitutional infirmities on appeal.  Doc. 1, pp. 16-18.  With regard to the first allegation, the alleged failure of trial counsel to investigate the case concerns actions taken during the pre-plea period.  As such, Schwieterman's claim that counsel was ineffective during pre-trial investigation is foreclosed by his plea and Schwieterman is not entitled to relief on such a basis.

In his second allegation, Schwieterman appears to allege that his trial counsel failed to give him good advice with regard to the plea agreement.  Based on this argument, it appears that Schwieterman may actually challenge the entry of his no contest plea on the basis that his trial counsel's ineffectiveness prevented the plea from being knowing and voluntary.  As discussed

14

above, this claim would not be barred by Schwieterman's plea.  However, this argument fails for

two additional reasons.  First, Schwieterman's allegations relating to alleged ineffective

assistance of trial counsel make no reference as to how his trial counsel's purported

ineffectiveness invalidated his guilty plea.  Indeed, it is unclear how counsel's alleged deficient

performance caused Schwieterman's plea to be unknowing or involuntary.  It is not the Court's

function to speculate as to the basis of a conclusory and undeveloped claim.  *See, e.g.,*

*McPherson v. Kelsey,* 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived. It is not sufficient for a party to mention a possible argument in the most skeletal way,

leaving the court to . . . put flesh on its bones.") (citations omitted).  Second, Schwieterman, who

is and has been represented by counsel, does not actually challenge the voluntariness of his plea

in this case.  His ineffective assistance of counsel argument fails because he has not actually

contended that his guilty plea was not entered knowingly, voluntarily and intelligently, with

sufficient awareness of the relevant circumstances and likely consequences, *see, e.g., Brady v.*

*United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama,* 395

U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *King v. Dutton,* 17 F.3d 151, 153 (6th

Cir.), *cert. denied,* 512 U.S. 1222, 114 S.Ct. 2712, 129 L.Ed.2d 838  (1994).[1]

Based on the foregoing, Schwieterman is not entitled to habeas relief on Grounds Two,

Three, and Four, and these claims should be dismissed.

### IV.    Procedural Barriers to Review

In the alternative, even if the claims in Grounds Two, Three, and Four are not foreclosed

from review by Schwieterman's no contest plea, Respondent argues that Schwieterman has

---

[1] As discussed below, even if Schwieterman's habeas petition can be construed as containing a claim challenging the
validity of his no contest plea based on ineffective assistance of trial counsel, that claim would be barred on habeas
review because he has procedurally defaulted this claim.

procedurally defaulted these grounds for relief and they are therefore still barred from review.

**A.        Exhaustion and Procedural Default**

A petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).[2]

Before a petitioner may seek a writ of habeas corpus from a federal court, that petitioner must first exhaust all available state court remedies.  28 U.S.C. § 2254(b)(1)(A).  Exhaustion requires that a petitioner fully and fairly present all constitutional claims to the state courts before presenting them to a federal court in a habeas petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts")).  The exhaustion requirement enables state courts to have "the initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, (1995) (per curiam) (citing *Wilwording v. Swenson*, 404 U.S. 249 (1971)).  The fair presentation requirement is satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims.  *See O'Sullivan*, 526 U.S. at 845, 848; *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The purpose of the exhaustion requirement is to promote comity between federal and state courts.  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

---

[2]  The AEDPA statute of limitations for filing a petition for a writ of habeas corpus is one year and it begins to run on the date judgment became final. 28 U.S.C. § 2244(d)(1).  The statute of limitations is not at issue in this case.

The doctrine of procedural default is closely related to that of exhaustion and advances the same goal of federal-state comity. *Francis v. Henderson*, 425 U.S. 536, 538-539 (1976). Procedural default will bar a claim when (1) that claim was fully and fairly presented to the state courts and the state-court ruling against the petitioner rests on independent and adequate state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *See O'Sullivan*, 526 U.S. at 844-48; *Coleman v. Thompson*, 501 U.S. 722, 735 & n.1 (1991); *Harris*, 489 U.S. at 263 & n.9; *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994). In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)*,* the Sixth Circuit established a four-part test to determine whether a claim is procedurally defaulted. This test requires federal habeas courts to determine: (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state court actually enforced the state procedural rule, (3) whether the state procedural rule was an "independent and adequate" state ground on which the state could rely to foreclose review of a federal constitutional claim, and (4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39.

**B.      Schwieterman's Second, Third, and Fourth Grounds for Relief are Procedurally Defaulted**

As discussed above, Schwieterman did not raise the claims in Grounds Two, Three, and Four in his direct appeal to either the state court of appeals or the Ohio Supreme Court. Instead, the first time Schwieterman asserted these claims was in the petition for post-conviction relief he filed with the trial court. Doc. 7, Exhibit 23. The trial court denied Schwieterman's petition. Doc.7, Exhibit 25. The state court of appeals affirmed the decision of the trial court and found that the claims set forth in the post-conviction petition were barred by res judicata because they could have been brought on direct appeal. Doc. 7, Exhibit 31.

17

Based on these facts, it is clear that the *Maupin* test is satisfied in this case.  It is well established in Ohio that, "[u]nder the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant . . .  on an appeal from that judgment."  *State v. Perry*, 10 Ohio St.2d 175, syllabus ¶ 9, 226 N.E.2d 104 (1967).  Here, Schwieterman could have asserted the claims in Grounds Two, Three, and Four, in his direct appeal, but he did not.  And, when he attempted to raise the claims in his petition for post conviction relief, the court of appeals enforced the procedural rule and found that such claims were barred by res judicata.  The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata* is an adequate ground for denying federal habeas relief.  *See, e.g., Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (finding that "Ohio's doctrine of *res judicata* as a procedural bar is regularly applied by the Ohio courts"); *Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir.2001) (noting that "this court has rejected contentions that Ohio has failed to apply its [doctrine of res judicata] consistently").  Thus, the first three factors of the *Maupin* test are met and Schwieterman's Second, Third and Fourth Grounds for Relief are procedurally defaulted unless he can show cause for the default and actual prejudice.

Schwieterman does not argue cause to excuse his procedural default, and no cause is apparent from the record.  Instead, he appears to argue that the state court of appeals misapplied the doctrine of res judicata because the factual basis of the claims in his petition for post-conviction relief were not available on direct appeal.  In particular, Schwieterman states that a re-creation of the car crash conducted by an expert witness he retained after he entered his no

18

contest plea revealed information as to how the crash occurred, and that this information was not available prior to his no contest plea.   This argument is unpersuasive.  All of the evidence surrounding the car crash was available and could have been discovered by Schwieterman before he entered his plea.  The fact that Schwieterman did not conduct an accident re-creation before he elected to change his plea does not mean that this evidence was undiscoverable.  Moreover, as noted by the state court of appeals, Ohio's doctrine of res judicata provides that any arguments that **could** have been raised in an initial appeal, but were not, will be barred from consideration in subsequent proceedings.  *State v. Hutton,* 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003).  The evidence Schwieterman obtained from his second expert witness regarding the car crash could have been discovered before he entered his plea and, in turn, he could have asserted his claims based on this evidence in his initial appeal.  The fact that he may not have actually discovered this information until after his appeal does not mean that it was undiscoverable.  The state court of appeals reached the same conclusion when it found that the claims in Schwieterman's petition for post-conviction relief were barred by res judicata.  Doc. 7, Exhibit 31, pp. 16-17.  This argument therefore provides no basis for Schwieterman to overcome his procedural default of Grounds Two, Three, and Four.

Having determined that no cause exists to excuse Schwieterman's procedural default, the Court does not need to decide whether he suffered any prejudice.  *See Lott v. Coyle,* 261 F.3d 594, 609 (6th Cir. 2001).  Accordingly, all four factors of the *Maupin* test are satisfied and Schwieterman's Second, Third, and Fourth Grounds for Relief should be denied.

### V.  Merits Review of Ground One

Schwieterman has properly exhausted all available remedies in state court with regard to the claim in Ground One.  However, for the reasons set forth below, this claim – that his

19

aggregate sentence of 24 years in prison violates the Eighth Amendment prohibition against

cruel and unusual punishment – is without merit.

A.      **AEDPA Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to Schwieterman's habeas petition because he filed it

after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In

particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
>     application of, clearly established Federal law, as determined by the Supreme
>     Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
>     facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision is "contrary to" clearly established federal law when the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.

Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  A state court's

adjudication results in an "unreasonable application" of clearly established federal law only

when the state court identifies the correct governing legal principle from the Supreme Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id*. at 599-

600 (quoting *Williams*, 529 U.S. at 413).

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, ___ U.S.___, 132 S.Ct. 26, 181 L.Ed.2d 328, 2011 WL 5299458, at *1 (Nov. 7, 2011) (quoting *Harrington v. Richter*, 562 U.S. ___, ___ 131 S.Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).  The petitioner carries the burden of proof. *Cullen v. Pinholster,* ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). Schwieterman has not met his burden in this case.

**B.      Schwieterman's First Ground for Relief is Without Merit**

In Ground One, Schwieterman contends that the sentence he received was excessive. Specifically, he argues that the term of 24 years in prison imposed by the trial court violates the Eighth Amendment's prohibition against cruel and unusual punishment because his prison term is disproportionate to terms of incarceration imposed on other defendants in Mercer County, Ohio, who have also caused the deaths of other persons in motor vehicle accidents.  Doc. 1, p. 9. This argument is without merit.

The Eighth Amendment to the Constitution, made applicable to the states through the Fourteenth Amendment, provides that "cruel and unusual punishments [shall not be] inflicted."

U.S. Const. Amend. VIII.  The Eighth Amendment's Cruel and Unusual Punishment Clause "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Strict proportionality between a crime and its punishment is not required by the Eighth Amendment.  *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000) (citing *Harmelin v. Michigan*, 501 U.S. 957, 959–60, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)).  Rather, it only prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *United States v. Flowal*, 163 F.3d 956, 963–64 (6th Cir. 1998) (quoting *Harmelin*, 501 U.S. 957, 995–97); *see also United States v. Wiley*, 132 F. App'x. 635, 643 (6th Cir. 2005).  A sentence within the statutory maximum generally does not constitute cruel and unusual punishment.  *Austin v. Jackson,* 213 F.3d 298 (6th Cir.2000); *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995).

In his direct appeal, the state court of appeals reviewed Schwieterman's cruel and unusual punishment claim under the principles set forth above and overruled the claim, stating:

> [*P18] In the first assignment of error, Schwieterman contends that the aggregate sentence, not the individual sentences, violates the Eighth Amendment protection against cruel and unusual punishment. Specifically, Schwieterman claims that the aggregate sentence is grossly disproportionate to sentences imposed in similar cases. In his appellate brief, Schwieterman cited to three cases he claims involved similar facts and convictions.

> [*P19] The Supreme Court of Ohio considered a similar argument in *State v. Hairston,* 118 Ohio St.3d 289, 2008 Ohio 2338, 888 N.E.2d 1073. Hairston pled guilty to four counts of aggravated robbery, three counts of aggravated burglary, four counts of kidnapping, all with firearm specifications, and three counts of having a weapon while under disability. *Id. at P 7.* At sentencing, the court imposed maximum, consecutive sentences for each offense, including the firearm specifications, which resulted in an aggregate prison term of 134 years. *Id. at P 9.* Hairston appealed his sentence, arguing that the aggregate sentence constituted cruel and unusual punishment in violation of the *Eighth Amendment of the United States Constitution* and *Section 9, Article I of the Ohio Constitution.*

> [*P20] Beginning its analysis of Hairston's proposition of law, the court wrote:

In *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 1999 Ohio 113, 715 N.E.2d 167, we applied Justice Kennedy's Eighth Amendment analysis in his concurring opinion in *Harmelin v. Michigan* (1991), 501 U.S. 957, 997, 111 S.Ct. 2680, 115 L.Ed.2d 836. We quoted with approval his conclusion that "'[t]he *Eighth Amendment* does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *Weitbrecht,* 86 Ohio St.3d at 373, 715 N.E.2d 167, quoting *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring in part and in judgment). We further emphasized that "'only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'" may a court compare the punishment under review to punishments imposed in Ohio or in other jurisdictions. *Id.* at 373, 715 N.E.2d 167, fn. 4, quoting *Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring in part and in judgment).

With respect to the question of gross disproportionality, we reiterated in *Weitbrecht* that "'[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person,'" and furthermore that "'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" *Id.* at 371, 715 N.E.2d 167, quoting *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 70, 30 O.O.2d 38, 203 N.E.2d 334, and citing *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus.

*Hairston,* at P 13-14. The court noted that Ohio's felony sentencing scheme had been designed to focus the sentencing courts on one offense at a time. *Id.* at P 16, quoting *State v. Saxon,* 109 Ohio St.3d 176, 2006 Ohio 1245, 846 N.E.2d 824, at P 8-9. The court relied on several circuit court opinions in determining that the Eighth Amendment proportionality test is inapplicable to aggregate prison terms. *Id. at P 17*, citing *United States v. Aiello* (C.A. 2, 1988), 864 F.2d 257; *Hawkins v. Hargett* (C.A. 10, 1999), 200 F.3d 1279; *Pearson v. Ramos* (C.A. 7, 2001), 237 F.3d 881; *United States v. Schell* (C.A. 10, 1982), 692 F.2d 672.

[*P21] The court held that:

for purposes of the *Eighth Amendment* and *Section 9, Article I of the Ohio Constitution*, proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively. Where none of the

individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment.

*Id.* at P 20. The court went on to review the individual sentences and found each sentence to be within the pertinent statutory range. *Id.* at P 21-23. The court cited its prior holdings that "trial courts have discretion to impose a prison sentence within the statutory range for the offense," and that "'[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment.'" *Id.* at P 21, citing *State v. Foster,* 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470, at paragraph seven of the syllabus; quoting *McDougle v. Maxwell,* 1 Ohio St.2d 68, 69, 203 N.E.2d 334, citing *Martin v. United States* (C.A. 9, 1963), 317 F.2d 753; *Perpendrea v. United States* (C.A. 9, 1960), 275 F.2d 325; *United States v. Rosenberg* (C.A. 2, 1952), 195 F.2d 583.

[*P22] For a first-degree felony, a trial court may sentence an offender to three, four, five, six, seven, eight, nine, or ten years in prison. *R.C. 2929.14(A)(1).* The individual sentences of six years for each first-degree felony offense were within the valid statutory range. This court is bound by the precedent of the Supreme Court of Ohio. *Section 3(B)(2), Article IV, Ohio Constitution.* As such, we hold that neither the aggregate prison term of 24 years nor the individual sentences violate the Eighth Amendment protection against cruel and unusual punishment.

[*P23] We note that Schwieterman referenced three other cases to support his argument that his sentence was disproportionate to sentences imposed on others for similar offenses. Although the defendants in each of those cases had been intoxicated and driving, none of those defendants were convicted of involuntary manslaughter. In *State v. Neace,* (Mar. 1, 2000), 3d Dist. No. 10-99-07, 2000 Ohio App. LEXIS 718, the defendant was apparently convicted of aggravated vehicular homicide, a violation of R.C. 2903.06(A)(1), which is a second-degree felony. The defendant killed two people when he wrecked the boat he had been operating while intoxicated. The court sentenced Neace to serve two, consecutive, three-year prison terms. In *State v. Reinhart,* 3d Dist. No. 15-06-07, 2007 Ohio 2284, this court reversed the defendant's conviction for aggravated vehicular homicide based on a faulty indictment. Finally, in *State v. Kiger,* 3d Dist. No. 7-03-03, 2004 Ohio 530, the defendant was sentenced to two, consecutive, eight-year prison terms for killing two victims in a collision after he operated a vehicle while intoxicated. Again, Kiger's convictions were for aggravated vehicular homicide, second-degree felonies.

[*P24] Schwieterman pled no contest to and was found guilty on four counts of involuntary manslaughter, first-degree felonies. He received a six-year prison term on each count. In reviewing first-degree involuntary manslaughter cases, we have found sentences ranging from five years to ten years. *State v. Luke,* 3d Dist. No. 1-06-103, 2007 Ohio 5906; *State v. Cole,* 3d Dist. No. 4-07-05, 2007 Ohio

> 4485; *State v. Hairston,* 3d Dist. No. 1-06-92, 2007 Ohio 2988; *State v. Daniels,* 3d Dist. No. 12-06-15, 2007 Ohio 2281; *State v. Ramos,* 3d Dist. No. 4-06-24, 2007 Ohio 767; and *State v. Shoemaker,* 3d Dist. No. 14-06-12, 2006 Ohio 5159. Schwieterman selected "comparable" cases based on the defendants having operated motor vehicles while intoxicated. None of those cases involved defendants who were also under the influence of illegal drugs. Furthermore, none of those defendants were convicted for the same crimes as Schwieterman. While none of the defendants convicted of involuntary manslaughter had killed their victims by operating a motor vehicle while intoxicated, they were each convicted of first-degree felony involuntary manslaughter. The first assignment of error is overruled.

Doc. 7, Exhibit 18, at ¶¶ 18-24.

The state court of appeals correctly identified and applied the relevant federal law in its review of Schwieterman's Eight Amendment claim. Schwieterman has failed to show that the state court's application of federal law was contrary to, or an unreasonable application, of federal law. In fact, Schwieterman acknowledges that the state court applied the correct federal standard in evaluating his claim. He argues only that the decision is unreasonable because the state court simply concluded the sentence for each count was within the statutory range and therefore constitutional, rather than conducting a full proportionality analysis. However, Schwieterman's argument is conclusory at best and he cites to no cases, federal or otherwise, that would support his bald allegation of unreasonableness. Doc. 10, p. 16.

Schwieterman has failed to satisfy his burden of demonstrating that the state court's decision was an unreasonable application of federal law. The state court did more than simply look at the statutory maximum penalties for the offenses and conclude that Schwieterman's sentence was constitutional. That was only the first part of the state court's analysis. As noted by the state court of appeals, the maximum penalty on a count of involuntary manslaughter, a first degree felony in Ohio, was 10 years in prison. Ohio Rev. Code § 2929.14(A)(1) (2008). Each of the individual six-year sentences imposed on Schwieterman was well within the

maximum term of imprisonment for a count of involuntary manslaughter.  In addition, the state court noted that, for purposes of the *Eighth Amendment* and *Section 9, Article I of the Ohio Constitution*, proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively.  The state court's consideration of each count individually, rather than the cumulative sentence, was also reasonable.  The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes. *See, e.g., O'Neil v. Vermont,* 144 U.S. 323, 331, 12 S.Ct. 693, 36 L.Ed. 450 (1892) ("If [the defendant] has subjected himself to a severe penalty, it is simply because he committed a great many such offences.").  Next, the state court distinguished the three cases cited by Schwieterman in support of his claim that his sentences were disproportionate to other cases involving defendants who had killed people in motor vehicle accidents, noting that none of those cases involved first degree felony involuntary manslaughter counts.  Lastly, the state court compared similarly convicted first degree felony involuntary manslaughter offenders and the sentences in those cases, and found that sentence imposed on Schwieterman for each count of involuntary manslaughter were consistent with those comparable cases.  The state court's analysis of Schwieterman's Eighth Amendment claim was reasonable.

Finally, as noted in *Richter,* a writ of habeas corpus cannot properly issue unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Richter,* 131 S.Ct. at 786.  In this case, no such possibility exists.   As discussed above, the Supreme Court has articulated a "narrow proportionality principle" under which only "extreme sentences that are grossly disproportionate to the crime are prohibited." *Harmelin* 501 U.S. at 995-97.  It is well settled that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Organek,* 65 F.3d at 62 (quoting

*United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994)).  Consequently, Schwieterman's sentence of six years on each count of involuntary manslaughter, for an aggregate sentence of 24 years, is neither "extreme" nor "grossly disproportionate" so as to violate the Eighth Amendment.  Accordingly, Schwieterman's First Ground is without merit and should be denied.

## VI.  Evidentiary Hearing/Discovery

In the caption of his petition for writ of habeas corpus, Schwieterman requests discovery and an evidentiary hearing.  (Doc. 11, p. 6).  However, in *Cullen v. Pinholster*, ___U.S.___, 131 S.Ct. 1388, 1398–1401, 179 L.Ed.2d 557 (2011), the United States Supreme Court held that the AEDPA requires federal courts to evaluate the reasonableness of state court decisions on the basis of the "record in existence" that was before the state court at the time of the state court decision.  Under *Pinholster*, federal courts generally may not consider new evidence developed at an evidentiary hearing in federal court on claims adjudicated on the merits in state court. *Id.* Because the Court has been able to resolve all of Schwieterman's claims by reference to the state court record, it follows that, under *Pinholster*, he is not entitled to discovery or an evidentiary hearing on his claims.  Accordingly, Schwieterman's requests for discovery and for an evidentiary hearing are DENIED.

## VII.  Conclusion and Recommendation

For all of the reasons stated above, the undersigned Magistrate Judge concludes that

Petitioner Nicholas R. Schwieterman is not entitled to relief on any of the four grounds for relief

in his petition for writ of habeas corpus.  Accordingly, the Court should DENY Schwieterman's

petition for writ of habeas corpus and DISMISS this action with prejudice.


Dated: August 20, 2012

_____
Kathleen B. Burke
United States Magistrate Judge


## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).