### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS R. SCHWIETERMAN, | ) | CASE NO. 3:11CV1203 |
| | ) | |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KEVIN SMITH, Warden, | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Kathleen B. Burke, recommending denial of this petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. No. 11.) Represented by counsel, petitioner Nicholas R. Schwieterman ("petitioner" or "Schwieterman") filed objections. (Doc. No. 14.) Respondent filed neither his own objections nor any response to petitioner's objections. Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters raised in the objections. For the reasons discussed below, the objections are overruled, the R&R is accepted, and the petition for writ of habeas corpus is denied and dismissed.

### I. BACKGROUND

The facts, which "shall be presumed to be correct" absent clear and convincing evidence brought forward by petitioner, 28 U.S.C. § 2254(e)(1), were set forth as follows by the Third District Court of Appeals of Ohio, and included some facts that were stipulated by the parties:

> **{¶1}** The defendant-appellant, Nicholas Schwieterman, appeals the judgment of the Mercer County Common Pleas Court sentencing him to an aggregate prison

term of 24 years. On appeal, Schwieterman contends that his sentence violates the Eighth Amendment protection against cruel and unusual punishment, and that the trial court erred by imposing consecutive and non-minimum sentences. For the reasons set forth herein, the judgment of the trial court is affirmed.

{¶2} The parties have stipulated to the following facts:

> On or about March 15, 2008, at approximately 2:15 a.m. Deputies from the Mercer County Sheriff's Office were dispatched to an injury collision at the intersection of County Road 716A and Brockman Road in Mercer County, Ohio. When they arrived on scene, they observed a grey Pontiac Bonneville off the road in the northwest corner of the intersection. It was severely damaged and the rear end of the vehicle had collided with the utility pole located in the field at the northwest corner of the intersection. They further observed a red Pontiac Grand Prix in a field further northwest of the grey Bonneville. The red Pontiac Grand Prix was also severely damaged. The investigation revealed that the 1996 Pontiac Bonneville was traveling westbound on Brockman Road when it failed to yield the right-of-way and/or stop for the stop sign that controls the intersection of 716A and Brockman Roads. The Bonneville collided with the red 1995 Pontiac Grand Prix which had been traveling northbound on County Road 716A at the time of the collision. The Pontiac Grand Prix was being operated by Jordan Moeller and passengers in the vehicle were Jordan Diller, Bradley Roeckner and Jordan Goettemoeller. All four occupants in the Pontiac Grand Prix died as a proximate result of the collision.

> Deputies approached two male individuals identified as Nicholas Schwieterman and Kyle Schmitmeyer. They both had blood shot eyes and strong odors of alcohol on or about their persons, also Nicholas Schwieterman['s] speech was slurred and he was hard to understand. They both initially denied they were driving the Bonneville, they were both read Miranda rights and were both transported to Coldwater Community Hospital/Mercer Health. Upon questioning Schwieterman at the hospital he admitted he was the driver of the motor vehicle and Schmitmeyer also identified Schwieterman as the driver. Schwieterman consented to a blood draw and urine sample after being read the BMV 2255 form. The blood sample was submitted to the Ohio State University Medical Center Clinical Laboratories for forensic testing on March 15, 2008. Mr. Schwieterman was arrested for Aggravated Vehicular Homicide and transported to the Mercer County Jail.

> **The Ohio State University Medical Center Clinical Laboratories completed [its] analysis of the blood sample and conclude[d] that Mr. Schwieterman had a concentration of one hundred thirty-four thousands (0.134) of one percent by weight per unit volume of alcohol in Schwieterman's whole blood.**
>
> **The Ohio State University Medical Center Clinical Laboratories completed [its] analysis of the urine sample collected from Mr. Schwieterman after the crash. The test concluded the Defendant possessed 7990 ng/ml of Cocaine in his urine. The test also concluded that the Defendant possessed 48 ng/ml of THC in his urine.**

Stipulation of Facts on No Contest Plea, Oct. 9, 2008.

{¶3} On April 7, 2008, the Mercer County Grand Jury indicted Schwieterman on the following charges: four counts of involuntary manslaughter, violations of R.C. 2903.04(A), first-degree felonies; one count of possession of drugs, a violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony; four counts of aggravated vehicular homicide, violations of R.C. 2903.06(A)(1)(a), (B)(1)(2)(a), second-degree felonies; one count of operating a motor vehicle while under the influence of alcohol or drugs of abuse, a violation of R.C. 4511.19(A)(1)(a), (G)(1)(a)(i), a first-degree misdemeanor; one count of operating a motor vehicle while under the influence of alcohol or drugs of abuse, a violation of R.C. 4511.19(A)(1)(b), (G)(1)(a)(i), a first-degree misdemeanor; four counts of aggravated vehicular homicide, violations of R.C. 2903.06(A)(2)(a), (B)(1)(3), third-degree felonies; and one count of trafficking in drugs, a violation of R.C. 2925.03(A)(1), (C)(4)(a), a fifth-degree felony.[1] At arraignment on April 10, 2008, Schwieterman pled not guilty to each charge.

> [1] Schwieterman had previously been indicted by the Mercer County Grand Jury on ten counts in Mercer County Common Pleas Court case number 08-CRM-016. The indictment in that case was dismissed following the state's receipt of toxicology results, which indicated the presence of cocaine and marijuana in Schwieterman's blood and urine on the morning of March 15, 2008. A special session of the grand jury was conducted, and the above referenced indictment was filed in Mercer County Common Pleas Court case number 2008-CRM-022, which is before us on appeal.

{¶4} On May 5, 2008, Schwieterman filed a motion to suppress evidence. The state filed a response, and both parties filed post-hearing memoranda. On July 16, 2008, the court denied the motion. The state filed a motion for change of venue on July 31, 2008, which Schwieterman moved to strike on August 8, 2008. The court granted Schwieterman's motion to strike on August 11, 2008.

{¶5} On October 9, 2008, a waiver of constitutional rights prior to entering pleas of no contest, which Schwieterman had signed, was filed. The parties filed the stipulation of facts on no contest plea, which was quoted above, and a written negotiated plea agreement was filed. Schwieterman pled no contest to four counts of involuntary manslaughter, one count of possession of drugs, and one count of operating a motor vehicle while under the influence of alcohol or drugs of abuse ("OMVI"). The state agreed to, and did, dismiss the remaining counts of the indictment. On October 20, 2008, the court filed its judgment entry finding Schwieterman guilty on the charges to which he had pled no contest.

{¶6} Schwieterman filed a sentencing memorandum on November 10, 2008, and on November 12, 2008, the trial court held a sentencing hearing. Based solely on the pre-sentence investigation report, the court made preliminary determinations under R.C. 2929.12 that the victims and their families had suffered serious physical and psychological harm; that Schwieterman had been adjudicated delinquent as a juvenile; and that Schwieterman showed genuine remorse. Schwieterman presented testimony from Roberta Donovan, a mental health counselor at Foundations Behavioral Health Services, his life-long friend, Sarah Hein, and his father, Robert Schwieterman.

{¶7} Donovan testified that Schwieterman was on suicide watch at the Mercer County Jail when she had her first correspondence with him. At that time, "some of the first comments out of his mouth were 'Oh, my God' which he repeatedly said. He also made comments of 'just shoot me.' 'Someone get rid of me.' 'I am going to have a heart attack.' 'I am fucking dead' and 'I'm going to be all by myself for a long time.' 'Get rid of me. I will pay you.'" Sentencing Tr., Jan. 2, 2009, at 9:19-24. Donovan stated that Schwieterman was crying and scared, and she observed that his emotions were "heart-felt." *Id*. at 10. Donovan stated that she continued to provide counseling services to Schwieterman after he was released on bond, and he had never missed a session with her. *Id*. at 12. Schwieterman told Donovan that he wanted to apologize to the victims' families, and he wanted to schedule speaking engagements to tell others his story and about the victims. *Id*. at 14. Donovan stated that she found Schwieterman to be different from her typical clients because he openly shared his feelings with her. *Id*. at 15. She also believed that Schwieterman's expressed feelings were genuine; that his feelings were for the victims and not self-pity; and that he could benefit the community because he was willing to accept the consequences of his actions and was willing to try to make a difference. *Id*. at 14-15.

{¶8} On cross-examination, Donovan testified about Schwieterman's alcohol and drug abuse. Schwieterman reported that he began drinking alcohol at age 15, using marijuana at age 20, and using cocaine during his senior year of high school. *Id*. at 21-22. Schwieterman later told her that his drug habits formed in the following order: alcohol, nicotine, marijuana, and cocaine. *Id*. at 23.[2] Schwieterman disclosed that he would drink alcohol on Thursday nights and

4

during the weekends; that he used marijuana once per week; and that he used cocaine once per month. *Id.*

> ² The pre-sentence investigation report supported the latter statement. However, alcohol abuse began at age 15, and drug abuse began while Schwieterman was in high school.

**{¶9}** The next defense witness was Sarah Hein, Schwieterman's life-long friend and neighbor. Hein testified that she and Schwieterman were close to each other and described a sibling-like relationship. *Id.* at 27. Hein told the court that Schwieterman was very hurt by the collision and would trade places with any of the victims if he could. *Id.* at 29. Hein testified that Schwieterman cried about the collision, and she believed that his tears were for the victims and not out of self-pity. *Id.* Hein also indicated Schwieterman's desire to make presentations after he had served his sentence. *Id.* at 30. On cross-examination, Hein testified that she had seen Schwieterman and his family praying for the victims and their families, and that she had been surprised when she learned the frequency of his drug use. *Id.* at 36.

**{¶10}** Finally, Schwieterman's father, Robert, testified that he had been aware of his son's "partying." *Id.* at 44. Robert had known that Schwieterman worked when it was time to work and partied when it was time to party. *Id.* Robert stated that he had never talked to Schwieterman about underage drinking because his father had never talked about it with him and because "it's the social system in this area." *Id.* at 45. Robert discussed his son's emotional state since the collision, indicating that Schwieterman had been inconsolable and wished he could have been the one to die instead of the victims. *Id.* at 49.

**{¶11}** On cross-examination, Robert admitted he had been aware of Schwieterman's juvenile adjudication, which was for an alcohol-related offense, and he had also been aware of Schwieterman's conviction for criminal damaging. *Id.* at 51. However, Robert indicated that Schwieterman's juvenile adjudication made him more secretive about his alcohol use, and he downplayed the facts of the misdemeanor conviction while demonstrating that Schwieterman had accepted responsibility for the act, had served his sentence, had been offered a job upon his completion of community service. *Id.* Robert believed his son's remorse to be genuine. *Id.* Robert testified that Schwieterman was always concerned about his appearance and only wore pressed shirts. *Id.* at 53. He also stated that he had not been aware of Schwieterman's drug usage, and that Schwieterman had been able to keep his drug use a secret from the entire family. *Id.* at 46; 54.

**{¶12}** Defense counsel then spoke on Schwieterman's behalf. Counsel asked the victims' families to forgive Schwieterman for his failure to apologize earlier. Counsel indicated that Schwieterman had wanted to apologize to the victims' families since the collision, but he had not done so on counsel's advice. Counsel

also expressed concern that the community had a serious alcohol and drug abuse problem. Counsel stated that he was shocked to learn how common alcohol abuse was in the community; that bars were openly serving alcohol to people under the age of 21; and that the community seemed to view drinking and driving as an acceptable practice. Counsel noted that the community had been supportive of Schwieterman until the toxicology reports had been released and revealed Schwieterman's cocaine use. Counsel noted Schwieterman's genuine remorse for the collision, and his desire to begin speaking engagements.

{¶13} Counsel requested that the court impose a prison term of between eight and twelve years. Counsel told the court that a harsh sentence would simply send Schwieterman to prison, and the community would forget him. However, if the court was reasonable in sentencing, Schwieterman would be able to return to the community and be scorned by residents who would recognize him and remember the crimes he had committed. A more reasonable sentence would serve as a "wake up call" to the young people of the community that alcohol abuse and drinking and driving are not acceptable.

{¶14} Schwieterman also made a statement in which he first said that he had made the worst decision of his life on March 15, 2008. Schwieterman apologized to the families and indicated that "[n]ot a day will go by the rest of my life that I don't think of those four boys and the great lives that were taken that night." *Id*. at 67. Schwieterman stated that his "decision to get behind the wheel while under the influence was, you know, a horrible, horrible mistake." *Id*. at 68. Schwieterman told the court that a day will never pass that he does not think about the victims, and he hoped that one day he would be able to give presentations that might prevent even one person from making the same decisions he had made. *Id*. Schwieterman ended his statement by asking that the victims' families some day find peace and forgive him. *Id*. at 68-69.

{¶15} Representatives from each of the victims' families were given the opportunity to speak. Their readings were emotional and described the effects of losing their children in such an abrupt manner. Several parents described their dead sons' bodies at the hospital following the collision and how they had held their sons' bodies for hours. One of the fathers described having been dispatched to the scene of the collision as a first-responder and being apprehended by his colleagues to prevent him from finding his deceased son in the wreckage. Several siblings testified about their losses, and parents talked about how other siblings had been affected; several smaller children waking with nightmares and other small children sleeping in their deceased brother's bed each night.

{¶16} Finally, the assistant prosecutor spoke on behalf of the state of Ohio and requested a "lengthy and significant sentence." *Id*. at 122. The state addressed Ohio's sentencing statutes, and focused on Schwieterman's concern with appearances, his ability to hide drug use from his family and Hein, and his lack of

remorse. The state noted Schwieterman's statements, which had been recorded
when he was transported by law enforcement from the hospital to the county jail
and which were played during the hearing. In particular, the state focused on
Schwieterman's statements about his life being over and his asking law
enforcement to end his life. *Id*. at 114. The state believed that, contrary to other
witnesses' opinions, such statements demonstrated self-pity rather than concern
for the victims and their families.

**{¶17}** After a short recess, the court proceeded to sentence Schwieterman to four,
consecutive six-year prison terms for the involuntary manslaughter convictions.
The court also imposed a one-year prison term for the possession of drugs
conviction and six months in the county jail for the OMVI conviction. The court
ordered those sentences to be served concurrently with the sentences imposed for
the involuntary manslaughter convictions for an aggregate prison term of 24
years. The court filed its judgment entry of sentence on November 14, 2008.
Schwieterman appeals the judgment of the trial court, raising two assignments of
error for our review.

(Return of Writ, Doc. No. 7-18 at 1275-84, bolding and footnotes in original.)

Represented by new counsel, Schwieterman filed a direct appeal, asserting two

assignments of error:

I.     The trial court violated appellant's Eighth Amendment, [sic] made
       applicable to the States by the Fourteenth Amendment right against cruel
       and unusual punishment by sentencing him to a term of twenty four years
       in prison.

II.    The trial court erred in imposing consecutive/non minimum sentences on
       the appellant.

(Doc. No. 7-15 at 1203.) On May 18, 2009, the court of appeals overruled the two assignments

of error and affirmed the judgment of the trial court. (Doc. No. 7-18.)

Again represented by counsel, on July 2, 2009, Schwieterman timely appealed the

appellate court's decision to the Ohio Supreme Court, asserting as propositions of law the same

two grounds he had raised before the court of appeals. (Doc. No. 7-20.) On October 14, 2009, the

Ohio Supreme Court declined jurisdiction and dismissed the appeal as not involving any

substantial constitutional question. (Doc. No. 7-22.)

Meanwhile, while his direct appeal was pending, on May 7, 2009, through the same counsel representing him on direct appeal, Schwieterman filed in the trial court a petition for post-conviction relief. He asserted the following six claims:

I.      Petitioner was denied due process pursuant to the Fifth Amendment to the federal Constitution made applicable to the States via the Fourteenth Amendment due to the State of Ohio failing to fully investigate this matter.

II.     Petitioner was denied due process pursuant to the Fifth Amendment of the federal Constitution made applicable to the State of Ohio via the Fourteenth Amendment when the State of Ohio destroyed exculpatory evidence, the air bag sensors attached to the 1995 Grand Prix.

III.    Petitioner was denied due process by the misconduct of the Mercer County prosecutor's office.

IV.     Petitioner was denied effective assistance of counsel guaranteed by the Sixth Amanemdnet [sic] made applicable to the States via the Fourteenth Amendment for failing to properly investigate the government's allegations of how this accident occurred.

V.      Petitioner was denied effective assistance of counsel guaranteed under the Sixth Amendment to the federal Constitution made applicable to the States via the Fourteenth Amendment for failing to give sound advice regarding the plea agreement.

VI.     Petitioner's incarceration is a violation of the Eighth and Fourteenth Amendments to the federal Constitution based upon his actual innocence of the crime for which he plead no contest.

(Doc. No. 7-23 at 1364-65.) On July 23, 2009, the trial court denied the petition. (Doc. No. 7-25.) On August 11, 2009, an appeal was filed by counsel for Schwieterman. (Doc. No. 7-26.) In his appellate brief, Schwieterman raised five assignments of error:

I.      The trial court erred in denying the post conviction petition without holding an evidentiary hearing.

II.     The trial court erred in making a specific finding that the government did not violate his right to due process guaranteed by the Fifth Amendment to

8

the federal Constitution made applicable to the States by the Fourteenth Amendment by destroying potentially exculpatory evidence.

III.     The trial court erred in making a specific finding that the prosecutor had not engaged in misconduct.

IV.     The trial court erred in specifically finding that trial counsel was effective purusant [sic] to the Sixth Amendment of the federal Constitution made applicable to the States by the Fourteenth Amendment.

V.      The trial court erred in specifically finding that the appellant is not actually innocent of the crime for which he plead no contest.

(Doc. No. 7-28 at 1699.) On January 21, 2010, the court of appeals affirmed the trial court's judgment. (Doc. No. 7-31.) Schwieterman unsuccessfully sought reconsideration by the court of appeals. (Doc. Nos. 7-32, 7-35.) An appeal to the Ohio Supreme Court was filed through counsel, raising five propositions of law:

I.      An appellate court cannot, sua sponte, raise an affirmative defense for a party to a civil action including post conviction proceedings.

II.     The trial court and the court of appeals erred in making a specific finding that the government did not violate his right to due process guaranteed by the Fifth Amendment to the federal Constitution made applicable to the States by the Fourteenth Amendment by destroying potentially exculpatory evidence.

III.    The trial court and the court of appeals erred in making a specific finding that the prosecutor had not engaged in misconduct.

IV.     The trial court and the court of appeals erred in specifically finding that trial counsel was effective purusant [sic] to the Sixth Amendment of the federal Constitution made applicable to the States by the Fourteenth Amendment.

V.      The trial court erred in denying the post conviction petition without holding an evidentiary hearing.

(Doc. No. 7-37 at 1823.) On June 9, 2010, the Ohio Supreme Court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 7-39.) A

9

timely-filed petition for certiorari was denied by the United States Supreme Court on November 8, 2010. (Doc. No. 7-40.)

Still represented by counsel, Schwieterman filed the instant petition on June 10, 2011, raising four grounds for relief:

> **Ground One:** The trial court violated petitioner's Eighth Amendment, [sic] made applicable to the States by the Fourteenth [sic] Amendment right against cruel and unusual punishment by sentencing him to a term of twenty four years in prison.[1]
>
> **Ground Two:**  The State of Ohio violated pettitioner's [sic] right to due process guaranteed by the Fifth Amendment to the federal Constitution made applicable to the States by the Fourteenth Amendment by destroying potentially exculpatory evidence.[2]
>
> **Ground Three:**  The State of Ohio via the Mercer County prosecutor had engaged in misconduct.[3]
>
> **Ground Four:**  Trial counsel did not provide effective assistance of counosel [sic] pursuant to the Sixth Amendment of the federal Constitution made applicable to the States by the Fourteenth Amendment.[4]

(Doc. No. 1.) Respondent filed a return on September 30, 2011 (Doc. No. 7), and Schwieterman filed a traverse on January 2, 2012 (Doc. No. 10).

On August 20, 2012, the Magistrate Judge issued her R&R recommending denial of the petition. The R&R specifically concludes that Grounds Two, Three and Four are waived by virtue of petitioner's no contest plea and, further, are procedurally defaulted. With respect to Ground One, which the R&R addresses on the merits, the Magistrate Judge concludes that petitioner failed to meet his burden of establishing that the state appellate court's decision was an

---

[1] This ground was raised as assignment of error number 1 in petitioner's direct appeal.

[2] This ground was raised as claim number 2 in the post-conviction relief petition before the trial court.

[3] This ground was raised as claim number 3 in the post-conviction relief petition before the trial court.

[4] This ground is a combination of claims 4 and 5 raised in the post-conviction relief petition before the trial court.

unreasonable application of federal law with respect to the Eighth Amendment prohibition against cruel and unusual punishment. The R&R further concludes that there is no reason for discovery and/or an evidentiary hearing because the issues can be, and should be, decided on the same record that was before the state court.

Petitioner has raised four objections:

1.  Petitioner did not waive constitutional violations of the state court by entering a no contest plea.

2.  Petitioner's claims are not barred by res judicata.

3.  Petitioner's Eighth Amendment claim has merit.

4.  Petitioner is entitled to discovery and an evidentiary hearing.

(Doc. No. 14.)

## II. DISCUSSION

### A.    Standard of Review

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at * 1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). *See also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been

11

properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections"). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its de novo review in a habeas context, this Court must be mindful of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas

court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

In addition, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant [for a writ of habeas corpus] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## B.     De Novo Review of Objections

### 1.     No Contest Plea as a Waiver of Pre-Plea Constitutional Violations

Petitioner pled no contest to six counts of the indictment (four first degree felonies, one fifth degree felony, and one first degree misdemeanor). He was subsequently sentenced to six years imprisonment for each first degree felony, all to run consecutively, and to one year for the fifth degree felony and six months for the misdemeanor, the latter two sentences to run concurrently with the others, for a total of 24 years imprisonment.

Respondent argued in his return of writ that, because of petitioner's plea, all of the grounds asserted in the habeas petition have been waived because petitioner has not contended that his plea was unknowing, involuntary, or unintelligent.[5]

---

[5] "The focus of federal habeas inquiry [with respect to a plea] is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970).]" *Id.* at 267. In *McMann*, the Court held that "[w]hether a plea of guilty is unintelligent . . . depends . . . not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases." *Id.* at 770-71 (footnote omitted).

13

The R&R concludes that ground one, relating to sentencing, is not waived by petitioner's plea and is, therefore, a proper matter for consideration on the merits. Not surprisingly, petitioner has made no objection to this conclusion with respect to waiver. Nor has respondent objected. Therefore, the Court accepts the R&R's conclusion that ground one is not waived and will  separately consider below petitioner's objection on the merits of ground one.

The R&R next concludes that the issues raised in grounds two and three, which involve pre-plea matters, are waived as a result of the plea. There is nothing in petitioner's first objection that addresses this conclusion with respect to grounds two and three and, therefore, to that extent, the R&R is accepted. Grounds two and three are deemed waived and will not be considered on the merits.

The R&R's conclusions with respect to the waiver of ground four are slightly more nuanced. It reads ground four as raising two challenges: (1) to the effectiveness of counsel with respect to the pre-plea investigation of the crash; and (2) to the effectiveness of counsel with respect to the advice given vis-a-vis entering a plea. As to the first, the R&R concludes that, because it relates to pre-plea actions of counsel, it is waived as a result of the plea. As to the second, the R&R concludes that, in theory, to the extent this argument could be construed as a challenge to the plea, it would not be waived; however, since petitioner has not shown how trial counsel's purported ineffectiveness invalidated his guilty plea[6] and, further, since petitioner is

---

[6] *See* Doc. No. 11 at 1929, citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

not actually contending that his plea was unknowing, involuntary, and/or unintelligent, the R&R declines consideration of this aspect of ground four.[7]

To the extent one can read petitioner's argument as an overall challenge to the plea, the R&R is correct that, in theory, it would not necessarily be waived for purposes of habeas. Naturally, petitioner offers no objection to that conclusion. His objection attempts to challenge the R&R's proposed dismissal of ground four on its merits. The Court concludes that ground four is not automatically waived as a result of petitioner's plea, and will, therefore, address the merits of petitioner's objection with respect to ground four below, not as part of this section on waiver.

In summary, the Court accepts the R&R's conclusion that grounds two and three are waived as a result of petitioner's guilty plea. Grounds one and four are not waived and will be addressed on the merits below.

### 2. Second, Third, and Fourth Grounds Barred by Res Judicata

The R&R concludes that grounds two, three, and four are all barred by res judicata because, as found by the state court of appeals, they were raised for the first time in post-conviction proceedings when they could have, and should have, been raised on direct appeal. (Doc. No. 11 at 1931-32.)

It appears that petitioner's objection is directed only at whether ground four is barred by res judicata. There is no argument directed toward grounds two and three and, therefore, the R&R is accepted to the extent it found grounds two and three procedurally barred.

---

[7] *See* Doc. No. 11 at 1929, citing *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.), *cert. denied,* 512 U.S. 1222 (1994).

By way of objection regarding whether ground four is barred, petitioner argues that "this claim" could not have been raised on direct appeal. (Doc. No. 14 at 1953.) He asserts: "It is unlikely that counsel would say he failed to put the state to its proof and should be found to have provided ineffective assistance[ ]" and, further, that it is "difficult to understand how the Petitioner claiming ineffective assistance can be denied relief because his ineffective lawyer did not raise evidence of his own ineffectiveness." (Doc. No. 15 at 1954.) Actually, what is difficult to understand is why petitioner would make this particular argument, since he was represented on direct appeal by two *different* lawyers than represented him at the trial stage. They were certainly free to raise trial counsel's ineffectiveness and should have done so if they felt it was a viable assignment of error.

The Court concludes, as does the R&R, that ground four is procedurally barred; however, in an abundance of caution, it will address the claim on its merits below.

### 3.     Merits of the Eighth Amendment Claim in Ground One

Petitioner claims that his aggregate sentence of 24 years imprisonment violates the Eighth Amendment cruel and unusual punishment clause because it is grossly disproportionate to the sentences that other criminal defendants have received for the same or similar crimes.

Although "[t]he concept of proportionality is central to the Eighth Amendment[,]" *Graham v. Florida*, 560 U.S. --, 130 S. Ct. 2011, 2021 (2010) (citing *Weems v. United States*, 217 U.S. 349, 367 (1910) ("punishment for crime should be graduated and proportioned to [the] offense")), "[t]he Supreme Court has articulated a 'narrow proportionality principle' whereby it held that only 'extreme sentences that are grossly disproportionate to the crime are prohibited.'" *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998) (quoting *Harmelin v. Michigan*, 501

U.S. 957, 995-97 (1991)). "[T]here is no clearly established United States Supreme Court precedent which requires proportionality between the sentence one offender receives and that imposed on other persons for the same offense." *Stafford v. Warden, Marion Corr. Inst.*, No. 1:09-cv-417, 2010 WL 3703236, at * 5 (S.D. Ohio Jul. 26, 2010) (citing *Pulley v. Harris*, 465 U.S. 37 (1984)). Rather, where a petitioner challenges the length of his sentence, "the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Stafford*, 2010 WL at 3703236, at * 6 (quoting *Graham*, *supra*, 130 S. Ct. at 2021).

The R&R concludes that petitioner has failed to show that the state courts' application of federal law was contrary to, or an unreasonable application of, federal law. The R&R notes, in fact, that "Schwieterman acknowledges that the state court applied the correct federal standard in evaluating his claim[,] [and] . . . argues only that the decision is unreasonable because the state court simply concluded the sentence for each count was within the statutory range and therefore constitutional, rather than conducting a full proportionality analysis." (Doc. No. 11 at 1939.)

In his objection, petitioner repeats his argument that a 24-year sentence "imposed on a person with no criminal record, who accepted responsibility and spared the families a trial, is disproportionate to other sentences handed down by the sentencing judge." (Doc. No. 14 at 1957.) He cites no law other than *Harmelin* and a state law case (*State v. Neace*) for which he gives no citation.[8]

---

[8] On habeas review, this Court is bound by federal case law, in particular, the pronouncements of the Supreme Court, 28 U.S.C. §§ 2241(c)(3), 2254(d), and may not issue a writ of habeas corpus based on a perceived error of state law. *Pulley*, 465 U.S. at 41.

Considering "all the circumstances of the case," *Graham*, *supra*, the Court concludes that ground one has no merit. The state court of appeals considering petitioner's Eighth Amendment claim in the first instance properly applied *Harmelin* and petitioner has failed to establish otherwise.

Accordingly, the objection with respect to ground one is overruled and the R&R's conclusion is accepted.

### 4.     Merits of the Sixth Amendment Claim in Ground Four[9]

Ground four addresses the issue of the effectiveness of counsel in two respects: failure to fully investigate how the deadly crash occurred, and failure to give good advice for purposes of petitioner's plea.

In fact, in his objections, petitioner points out no actual error in the R&R's reasoning with respect to either aspect of ground four. He quotes the R&R verbatim from pages 1927-29, but does not isolate where the alleged factual or legal error resides.[10] The closest he comes to a specific objection relating to ground four is in the section captioned "Bad Advice," where he states: "The magistrate focuses her entire analysis on the voluntariness of the plea." (Doc. No. 14 at 1951.) Interestingly, petitioner then states: "This is the correct analysis to employ in this case, but arguably the wrong conclusion." (*Id.*)

Petitioner then simply reasserts arguments he has made before: that an expert hired by post-conviction counsel subsequently concluded that the crash could not have occurred in the manner stipulated to during the plea hearing. He asserts that counsel's "lack of

---

[9] As already noted, although ground four is arguably procedurally barred, the Court discusses it on the merits in an abundance of caution.

[10] As noted, above: "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

investigation sullied the constitutional conclusion that counsel had provided effective assistance of counsel." (Doc. No. 14 at 1950.) In an additional attempt to save the first part of ground four from waiver, petitioner bootstraps it to the second part of ground four, asserting that "[t]rial counsel's failure to fully investigate the origin of the crash *led to* the bad advice heeded by the Petitioner[]" (Doc. No. 14 at 1951, emphasis added), and, since he "had no idea what the computer simulated reconstruction of this accident showed[,]" it only "appear[ed] . . . that the Petitioner, at that time, was entering the plea knowingly and voluntarily." (*Id*. at 1952.) He claims that "had [he] known the accident did not happen the way the state claimed[,] he would not have entered a plea[.]" (*Id*.)

Since this ground addresses a claim of ineffective assistance of trial counsel, petitioner's burden is to establish the elements set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that counsel's performance was deficient, that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Second, he must show that "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The explanation of the Court in *Hill* is particularly useful under the facts of the instant case:

In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. . . . As we explained

19

> in *Strickland v. Washington,* [466 U.S. at 695], these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."

*Hill*, 474 U.S. at 59-60.

Here, petitioner asserts that he would not have entered a guilty plea if he had known that a different (i.e., "proper") investigation would have revealed that the crash could not have occurred as described in the fact stipulation entered at his plea hearing. However, petitioner does not claim that he was prevented from having a proper crash analysis performed prior to his plea, nor does he claim that he was unaware of the nature and scope of the investigation that did occur. Absent such a showing, it must be presumed that petitioner was kept apprised of the investigation conducted by the defense expert and had enough confidence in the results that he accepted his counsel's advice to enter a plea.

Even if the Court were to take as true, for purposes this analysis, petitioner's assertion that he never would have entered a plea if he knew then what he knows now, that falls short of the test set forth in *Hill*. Petitioner's burden is to show that, had he gone to trial armed with the report of the expert attached to his post-conviction petition, the ultimate outcome would have been different. He has made *no* effort to establish this, either in his habeas petition or his objections to the R&R, and the mere "presence of dueling experts would rarely, if ever, make it impossible for a reasonable jury to convict a defendant." *U.S. ex rel. Blair v. Rednour*, No. 11 CV 4108, 2012 WL 1280831, at * 6 (N.D. Ill. Apr. 11, 2012).

For the reasons discussed, the Court overrules petitioner's objection with respect to the merits of ground four.

20

5.      **Right to Discovery and an Evidentiary Hearing**

Section 2254(e)(2) "imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing." *Cullen v. Pinholster*, -- U.S. --, 131 S. Ct. 1388, 1400-01 (2011). In *Cullen*, a majority of the Supreme Court held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. at 1398.

In this case, there is no need for discovery and/or an evidentiary hearing because the additional evidence petitioner would rely upon, namely, the expert opinion presented with his post-conviction petition in the state court, is already in the record. Having resolved all of the issues on the state court record as it existed when the issues were decided by the state courts, there is no need to try to carve out any exception to *Cullen*'s holding in order to permit discovery and/or an evidentiary hearing in this case.

Therefore, this objection is overruled.

### III. CONCLUSION

For the reasons discussed above, petitioner's objections to the R&R are overruled. The petition for writ of habeas corpus is denied and the case is dismissed. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: October 3, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

21