IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS SCHWIETERMAN, | ) | CASE NO. 3:11CV1203 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| KEVIN SMITH, *Warden*, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Nicholas Schwieterman ("Petitioner" or "Schwieterman") pleaded no contest to four counts of involuntary manslaughter[1] and was sentenced to 24 years in prison as the result of an automobile crash that took the lives of four young people. The case has been referred to the undersigned to prepare a report and recommendation regarding the question before the Court on remand from the Sixth Circuit (Doc. 32): "whether the petitioner's plea counsel was ineffective in light of the postconviction expert evidence concerning how the accident occurred, including the video reconstruction evidence mistakenly with[h]eld from the district court." Doc. 31, p. 5, (Memorandum Opinion and Order, citing the Sixth Circuit Opinion (Doc. 22, Page ID# 1999-2000)). Petitioner filed his opening brief (Doc. 34), Respondent filed a brief in opposition (Doc. 35), and Petitioner replied (Doc. 36). The undersigned has considered the parties' briefs, the post-conviction evidence, including the video reconstruction and photographic evidence, and the applicable law. For the reasons stated below, the undersigned recommends that the Court find that Petitioner's trial counsel was not ineffective. The undersigned **DENIES** Petitioner's request for an evidentiary hearing.

**I. Relevant Background**

---

[1] Schwieterman also pleaded no contest to possession of drugs and operating a motor vehicle while under the influence.

1

The underlying facts have been set forth in prior filings (*see* Doc. 15, pp. 1-7) and will not be repeated in full herein.  To summarize: Petitioner, while driving a car, was involved in a two-car crash that killed four teenagers, all occupants of the other car.  *Id*., p. 2.  At the time of the accident Petitioner was over the legal blood alcohol content limit and also tested positive for cocaine and THC.  *Id*., p. 3.  Neither he nor his lone passenger, who was likewise impaired by alcohol, has any recollection of how the accident occurred.  Doc. 34, pp. 8, 12.  All others involved in the crash died; there were no other witnesses.  Doc. 15, p. 2.  The crash occurred in the early hours of the morning at a country road intersection.  The victims, travelling north, had the right of way; Petitioner, heading west, had a stop sign.  *Id*.  A blood test performed on the driver of the victims' car showed only caffeine in his system.  Doc. 7-23, p. 140.

The state charged Petitioner with four counts of involuntary manslaughter and vehicular homicide, among other charges.  *Id*., p. 3.  Petitioner's counsel hired an expert to "look into how the accident occurred."  Doc. 34, p. 10; Doc. 7-23, p. 50, ¶54.  According to Petitioner, the expert "did not go to the scene, take pictures, or take measurements to determine if the accident occurred the way that the police reported."  Doc. 34, pp. 10-11.  Petitioner asserts that his counsel determined, based upon the investigation done by the Mercer County Sheriff's Department, that "the best thing for Petitioner to do was to throw himself on the mercy of the court."  *Id*., p. 11.  Thereafter, Petitioner, pursuant to a plea agreement, pleaded no contest to four counts of involuntary manslaughter and one count each of possession of drugs and operating a motor vehicle while under the influence; the state, also per the plea agreement, agreed to dismiss the remaining charges.  Doc. 7-6.  The trial court entered a judgment of guilty and sentenced Petitioner to 24 years in prison.  Doc. 15, pp. 4, 7.

As part of his plea agreement, Petitioner stipulated that he "failed to yield the right-of-way and/or stop for the stop sign that controls the intersection" prior to the crash. Doc. 7-3, p. 1 (Stipulation of Facts on No Contest Plea); Doc. 15, pp. 2, 4.

Thereafter, Petitioner filed a state post-conviction petition with new counsel and a new expert. Doc. 34, p. 17, Doc. 7-23. His new expert, Wilbur Meredith, submitted an affidavit stating his opinion that the "accident was not the result of a 'T-Bone' type crash as opined by the investigating police officers." Doc. 7-23, p. 37, ¶14. Although Petitioner states in his brief that Meredith "concluded that Petitioner could not have caused this fatal crash" (Doc. 34, p. 11), what Meredith actually concluded was that, in his opinion, "it is not possible to prove beyond a reasonable doubt that Mr. Schwieterman did not stop at the stop sign as charged by investigating police officers." Doc. 7-23, p. 37, ¶14.[2] Meredith also opined that Petitioner was traveling at 12 miles per hour ("mph") at the time of the crash, based on the post-crash speedometer reading taken from his car and his car's trajectory post-crash and that the victims' car was travelling at 84 mph at the time of the crash based on the post-crash speedometer reading taken from that car and its trajectory post-crash. *Id*. Therefore, giving Meredith's affidavit full credit, it constitutes expert opinion evidence that (1) the state would not have been able to prove beyond a reasonable doubt that Petitioner did not stop at the stop sign; (2) the cars collided at a 45 degree angle, not a

---

[2] In addition to the erroneous statement that Meredith concluded that Petitioner could not have caused the crash, there are a number of other discrepancies between statements made in Petitioner's brief and Meredith's affidavit, which is found at Doc. 7-23, pp. 36-38. For example, Petitioner, in his brief, cites Meredith's affidavit in stating that, "[a]ccording to the Meredith reconstruction," "Petitioner's car stopped completely for three seconds at the stop sign on Brockman Road." Doc. 34, p. 17. Meredith's affidavit did not conclude that Petitioner stopped "for three seconds;" indeed, no facts or data exist from which such a conclusion could be drawn. Instead, Meredith in his affidavit merely stated that it was impossible to prove a negative beyond a reasonable doubt, *i.e.*, that Petitioner did not stop at the stop sign. *See* Doc. 7-23, p. 37. Petitioner's brief, again citing Meredith's affidavit, states that Petitioner "began to pull out to see beyond the grove of trees" and that "Petitioner [was] struck by the other car." Doc. 34, p. 18. Those statements also do not appear in Meredith's affidavit. Rather, they are characterizations by Petitioner of what is shown in some of the Meredith reconstruction videos, which are simulations intended to depict how the accident might have occurred according to Meredith. The reconstruction videos are discussed more fully *infra*.

3

90 degree angle; and (3) Petitioner's car was travelling at 12 mph and the victims' car was travelling at 84 mph.

The state trial court denied Petitioner's post-conviction petition. Doc. 7-25. The trial court determined that, with respect to Petitioner's claim that trial counsel was ineffective for failing to investigate how the crash occurred, Petitioner failed to show that counsels' performance was deficient or that he was prejudiced, citing *Strickland v. Washington*, 466 U.S. 668 (1984). Doc. 7-25, pp. 1, 6. Specifically, the trial court observed that: (1) relying on cross examination of the state's witness instead of producing a defense expert witness is trial strategy and not ineffective assistance; and (2) the new evidence supplied by Meredith did not contradict the facts set forth in the Stipulation of Facts upon which he was adjudged guilty. *Id*., pp. 6-7. The Ohio Court of Appeal affirmed, finding that Petitioner's claims were barred by the doctrine of *res judicata* and, additionally, that they failed on the merits because, regardless of Petitioner's post-conviction arguments regarding the speed of the vehicles and the alleged contributory negligence of the victims, these arguments, even if accepted as true, would not provide Petitioner with a defense and did not contradict the facts that he stipulated to in his plea agreement. Doc. 7-31, pp. 19-20.

## II. Legal Standard

In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court

arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

5

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel in the context of guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (6th Cir. 1985). A petitioner must show that counsel's representation fell below an objective standard of reasonableness and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 58-59.

The parties agree that the Ohio Court of Appeals issued the last reasoned decision on the merits of this case and that AEDPA deference applies to that decision. Doc. 36, p. 6; Doc. 35, p. 35.[3]

### III. Analysis

**A. The Ohio Court of Appeals' decision**

In its decision affirming the trial court's denial of Petitioner's state post-conviction petition, the Ohio Court of Appeals quoted the following passages from the trial court's opinion:

> The basis for petitioner's first due process claim is that the State failed to fully investigate the facts which gave rise to the charges. Specifically, the petitioner claims that the Mercer County Sheriff should have referred the matter to the Ohio State Highway Patrol so that its accident reconstruction unit could have used its computer simulation to analyze the information gathered by the Sheriff's Department, including measurements and photographs. P[etitioner] further alludes to the failure of the investigation to obtain readings from the air bag sensors from the two vehicles involved in the crash. Petitioner claims that such an investigation would have shown that the petitioner was not the cause of the crash.
>
> Although additional evidence may have been obtainable from the air bag sensors and the accident reconstruction software, a post-conviction court can only reverse for inadequate investigation when the petitioner shows a deprivation of due process tantamount to a suppression of relevant evidence. * * * Here, the alleged speed of the vehicles and whether or not the petitioner came to a complete stop before entering the intersection is irrelevant. It is well settled that any contributory negligence of a victim cannot be a defense to a vehicular homicide unless it is the sole proximate cause of the accident. (See

---

[3] In his opening brief, Petitioner does not set forth the standard the Court should apply to his federal habeas claim. Respondent asserts that the Ohio Court of Appeals decided Petitioner's claim on the merits and that AEDPA deference applies. In his reply brief, Petitioner does not dispute Respondent's characterization of the state Court of Appeals' decision and adopts the AEDPA deferential standard in arguing that the Ohio Court of Appeals' decision was "unreasonable." Doc. 36, p. 6. The undersigned agrees that the Ohio Court of Appeals rendered a decision on the merits of Petitioner's claim and also notes that, even if a *de novo* standard were applied, Petitioner's claim would fail for the same reasons described herein.

6

*State v. Langenkamp* (2000), 137 Ohio App.3d 614, 620, 739 N.E.2d 404 and *State v. Garland* (1996) 116 Ohio App.3d 461, 688 N.E.2d 557.) Since the petitioner failed to yield the right-of-way, it cannot be said that the speed of the victims' vehicle was the sole proximate cause of the crash.

\* \* \* The record reflects that the State gave the petitioner a meaningful opportunity to present any defense he may have had or claimed to have during these proceedings. There is no evidence, nor does petitioner claim, that he was not provided all relevant information uncovered by the investigation of the incident which gave rise to the charges against him. Further, there is no evidence that the petitioner was denied his right to conduct his own investigation into the cause of the crash. Most importantly, there is no evidence that the State did anything or failed to do anything in its investigation of the facts of this matter that could result in a deprivation of the petitioner's due process rights to have all relevant evidence disclosed to him.

Petitioner's second claim that he was denied due process is based upon his allegation that the State destroyed exculpatory evidence in the form of air bag sensors attached to the 1995 Grand Prix automobile which was driven by Jordan Moeller \* \* \*. Factually, the petitioner claims that the air bag sensors contained information on how fast each of the vehicles involved in the crash were traveling at the time of impact. Petitioner relies on the opinion of Wilbur R. Meredith, III, who was retained by petitioner's counsel to evaluate and reconstruct the subject accident and whose affidavit is attached as Exhibit A to the petition. Mr. Meredith opines that the 1995 Grand Prix automobile driven by Jordan Moeller was traveling in excess of the posted speed limit, while petitioner was traveling at 12 miles per hour.

A review of Mr. Meredith's affidavit establishes that Mr. Meredith's opinion is consistent with the relevant portions of the stipulation of facts entered into by the petitioner. \* \* \* Although Mr. Meredith's testimony may have been "potentially useful" in plea negotiations, his affidavit does not contain facts that could be expected to play a significant role in petitioner's defense. \* \* \* His testimony does not support petitioner's claim that he was not at fault and therefore not criminally responsible for the crash \* \* \*.

Furthermore, petitioner has acknowledged that the detective from the Mercer County Sherriff's Office attempted to recover the information from the \* \* \* air bar sensor, but neither he nor the automotive technician who attempted to recover the information from the sensor were able to obtain any readings. \* \* \*

\* \* \*

With regard to petitioner's third due process claim that the Mercer County Prosecutor's Office was guilty of misconduct, nothing in the record supports this claim. Further, petitioner does not allege misconduct by the prosecutor's office outside of the record that would constitute misconduct. \* \* \*

\* \* \*

7

The petitioner's fourth and fifth claims are that he was denied effective assistance of counsel * * *, first, by failing to properly investigate how the accident occurred; and second, for failing to give sound advice regarding the plea agreement. The record does not support his claim that trial counsel's advice impaired the knowing and voluntary nature of his no contest plea.

* * *

Petitioner's claims regarding his counsel's failure to fully investigate the collision by retaining the services of an accident reconstruction expert do not fall below the objective standard of reasonable representation because the decision to rely on cross-examination of the prosecution's witness instead of producing a defense expert is trial strategy and does not itself constitute ineffective assistance. In addition, both attorneys for the petitioner visited the accident scene and thereby observed the scene of the crime first-hand. * * * As previously explained, even though petitioner's newly-retained counsel has obtained additional evidence from an independently hired accident reconstruction expert, that evidence does not contradict the facts as set forth in the stipulation of facts submitted at the change of plea hearing * * *. Therefore, the petitioner was not prejudiced by the actions of his counsel, even if trial counsel's assistance could be deemed ineffective.

* *

In petitioner's sixth claim that his Eighth and Fourteenth Amendment rights were violated based upon his claim that he is actually innocent of the crimes for which he entered pleas of no contest [sic] is not supported by the record, including the evidentiary materials attached to the petition.

Specifically, petitioner claims that the new evidence his attorneys have gathered in the form of accident reconstruction data proves that he is actually innocent of the crime for which he plead to; therefore, his incarceration is cruel and unusual punishment. However, Ohio courts have generally followed the United States Supreme Court holding in *Herrera v. Collins* (1993), 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203, that "a claim of 'actual innocence' is not itself a constitutional claim." See *State v. Watson* (1998) 126 Ohio App.3d 316, 710 N.E.2d 340. * * *

Even if "actual innocence" was a valid constitutional claim for post-conviction relief, the petitioner would still not be entitled to such relief because the evidence regarding the alleged speed of the victims' vehicle and the location of the trees that allegedly blocked the petitioner's view does not demonstrate that he is actually innocent since that evidence establishes that nothing other than the petitioner's failure to yield the right-of-way was the sole proximate cause of the collision.

* * *

Petitioner has requested a hearing on his petition. In order for the trial court to grant a hearing, the petition, the supporting documentation, and the court record must contain sufficient operative facts to establish substantive grounds for relief. * * *

> In considering each of the petitioner's claims, the court has considered the petition, the supporting affidavits, and the documentary evidence in support thereof, as well as all the files and records pertaining to this proceeding against petitioner. Based thereon, the court hereby determines that there are not substantial grounds for the relief sought by the petition. * * *
>
> The court, having considered the factors listed by the Supreme Court of Ohio in *State v. Calhoun* (1999), 86 Ohio St.3d 279, 714 N.E.2d 905, and based upon the entire record, the court concludes that there is no basis for granting petitioner's request for a hearing on his petition for post-conviction relief.

*State v. Schwieterman*, 2010WL 169192, at ** 4-6 (Oh. Ct. App. Jan. 29, 2010) (quoting the trial court's judgment entry). The state Court of Appeals elected to consider all Petitioner's claims on appeal together and stated, in relevant part,[4]

> {¶25}...[W]e note that Schwieterman did not establish "substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records in the case." *Jones*, 2007-Ohio-5624, at ¶ 12. As noted by the trial court, even if evidence was destroyed that established the victim was traveling in excess of eighty mph., and even if trial counsel would have hired an expert to establish that the accident did not occur in the manner as declared by the State, that evidence would not alter the fact that Schwieterman's failure to yield the right of way at the stop sign and his operation of the vehicle while under the influence of alcohol and cocaine proximately caused the deaths of the victims. It is well established that a decedent's contributory negligence is not a defense to a charge of vehicular homicide unless it is the sole proximate cause of the accident, *State v. Langenkamp*, 137 Ohio App.3d 614, 620, 739 N.E.2d 404, 2000-Ohio-1831; *State v. McGraw*, 3d Dist. No. 17-88-2, 1989 WL 153589; *State v. Dailey*, 5th Dist. No.2006-CA-0012, 2007-Ohio-2544, ¶ 32, and, clearly, the speed of the victim's vehicle was not the sole proximate cause of this accident.
>
> {¶ 26} Finally, Schwieterman's claim of innocence also cannot stand. This claim is based upon his assertion that the accident resulted from the victim operating his vehicle well in excess of the speed limit, and his view of the victims' vehicle being obscured by a row of trees. However, these contentions do not alter the fact that, at a minimum, Schwieterman's contributory negligence in failing to yield at the stop sign and in operating his vehicle while under the influence of alcohol and cocaine, both of which he stipulated to in his plea, proximately caused the deaths of these four young men. Any contributory negligence on the part of the victim was not the sole proximate cause of the accident, and, therefore, Schwieterman cannot be innocent.

---

[4] There is a presumption that AEDPA deference applies even when state courts do not discuss every claim separately. *Johnson v. Williams*, 133 S.Ct. 1088, 1094 (2013). Petitioner has made no effort to rebut that presumption.

*Id*. at *6, *9.

### B. Petitioner's evidence in support of his argument

The "reconstruction evidence mistakenly with[h]eld from the district court" was identified by the Sixth Circuit as "two sets of video reconstructions of the collision that [Meredith] created to illustrate his analysis." Doc. 22, Page ID# 1995.[5] Also to be considered are color photographs provided by Petitioner (Doc. 28-1) in place of black and white copies Respondent had filed with his Return of Writ that, as the District Court observed, are "so dark as to be useless." Doc. 31, p. 3, n. 3; Doc. 7-23, pp. 115-125. With respect to the videos, the Sixth Circuit cautioned,

> We take no position on the persuasiveness of these videos, which have never been subject to an evidentiary hearing. The state's failure to provide them along with the rest of the state postconviction records deprived the district court of important evidence that it needed to properly analyze Schwieterman's petition. We leave the first full analysis of this evidence to the district court on remand . . .

Doc. 22, Page ID# 1995.

The undersigned has reviewed the reconstruction videos and the color photos provided by the parties. The reconstruction videos are animated drawings depicting how the accident might have occurred. Meredith created two versions of the reconstruction videos: a "WRM VERSION" purporting to show the accident the way Meredith believes it may have occurred and a "POLICE VERSION" purporting to show the accident the way the police believe it occurred.[6] The police version shows a "T-bone" crash, i.e., Petitioner's car hitting the victims' car at a roughly 90 degree angle. The WRM version purports to show the crash occurring at a 45 degree angle. However, what the WRM videos actually show is the victims' car hitting Petitioner's car.

---

[5] Meredith's videos are on a flash drive that was submitted to the Court manually and are contained in the case file folder.

[6] Petitioner does not describe these separate versions; Respondent provides an explanation in his brief (Doc. 35, pp. 21, 39-40).

*See* Meredith's 2-D video (:07 seconds close version; :08 far version) and 3-D video (:08 seconds victims' point of view; :09 overview).[7]

The color photographs were taken by the police of the actual cars involved in the accident; they are overlaid with markings made by Meredith. The photos tell a very different story than the WRM Version reconstruction videos. The photo of the victims' car shows clearly that it was hit in the side; this is evidenced by the fact that the passenger side of the car is smashed in with the metal contorted in the shape of the front of a car. *See* Doc. 28-1, p. 7; 28-1, p. 9 (color photographs of victims' car). The front of Petitioner's car is badly crumpled, evidencing that Petitioner's car hit the victims' car with its front end. *See* Doc. 28-1, p. 4, 6 (color photographs of Petitioner's car). In addition, Deputy Doug Timmerman appeared on the scene shortly after the accident and observed the license plate from the front of Petitioner's car lying next to the passenger side of the victims' car, "where all of the damage was," and stated that he was told by the Fire Chief that the bumper from Petitioner's car was stuck to the side of the victims' car and that it had to be removed in order to reach the victims. Doc. 7-23, pp. 197-198.

The photos are compelling; there is no disputing what they depict. *See Witham v. Intown Suites Louisville Northeast*, 815 F.3d 260, 265 (6th Cir. 2016) ("We need not deny what our eyes can see through this visual evidence or cede all ground to the jury by suspending belief in our own eyes."); *Scott v. Harris*, 550 U.S. 372, 381 (2007). Accordingly, the undersigned does not find Meredith's reconstruction videos to be persuasive evidence.[8]

---

[7] The videos consist of 2-D and 3-D versions. The 2-D videos have "far" and "close" versions and the 3-D video has a version from the victims' point of view, Petitioner's point of view, and an "overview."

[8] Respondent also points out that Meredith's videos do not appear to take into account the effect of the terrain on the cars' trajectories post-crash, noting that the record shows that there were concrete culverts in each of the corners of the intersection and a ditch. Doc. 35, pp. 39-40.

Petitioner, in his opening brief, endorses the view that the victims' car hit his car. Doc. 34, p. 18. In doing so, he relies on Meredith's videos but not on Meredith's affidavit. Although Meredith's videos show the victims' car hitting Petitioner's car, Meredith does not reach this conclusion in his affidavit. Indeed, his affidavit contains no findings or opinion that the victims' car hit Petitioner's car or even that the accident was not caused by Petitioner. Thus, Meredith's reconstruction videos are not only inconsistent with actual photographs taken of the cars post-crash and with police reports describing the scene; they go well beyond the opinions stated in his affidavit. The videos do not merely purport to show how the crash could have occurred at a 45-degree angle but instead show the crash occurring in an entirely different manner than is supported by the photographs of the vehicles themselves.

Meredith, in his affidavit, opines that, instead of being a T-Bone type crash as opined by the investigating police officers, the cars crashed at a 45-degree angle. Doc. 7-23, p. 37, ¶¶ 14-15. It does not appear that this difference would have affected Petitioner's decision whether to go to trial. The photographs of Petitioner's and the victims' cars unequivocally show that Petitioner's car hit the victims' car with its front end and that the victims' car was hit directly in the passenger side. Even if Petitioner's car was at a 45 degree angle, that does not change the fact that Petitioner hit the victims' car. This unavoidable fact also negates the importance of Petitioner's assertion that he stopped at the stop sign. Even if Petitioner stopped, he then accelerated (up to 12 mph, according to Petitioner) into the intersection. In other words, he "failed to yield the right of way," as he stipulated in his plea agreement. The victims had the right of way; Petitioner was required to yield to their right of way; he did not yield to their right of way; rather, he hit them with his car.

In his reply brief, Petitioner appears to back off his assertion in his opening brief that the victims' car hit him. Instead, he contends that the victims' car was speeding and that the crash would not have occurred had the victims' car not been speeding.[9] Doc. 36, p. 14. He states,

> If the first car was not speeding there would be no accident. Petitioner would have seen the car prior to moving out into the intersection and would have stopped letting the car go by. The car was traveling almost ninety miles an hour, the fact that that part of the road is obstructed by large trees, and the time of day this accident occurred, the speeding car did not allow Petitioner to see him and act accordingly.

Doc. 36, p. 12.

Petitioner agrees that, in Ohio, contributory negligence of a victim cannot be a defense to vehicular homicide unless it is the sole proximate cause of the accident. *Id*. *See also State v. Langenkamp*, 739 N.E.2d 404, 409 (Oh. Ct. App. 2000) ; *State v. Ward*, 2001 WL 220244, at *3 (Oh. Ct. App. March 2, 2001) ("In other words, as long as the state can prove the defendant's actions were *a* cause of the death, it is irrelevant whether there were any other contributory causes.") (emphasis in original). Thus, even if the victims' car was speeding, it cannot be said that the speeding was the sole proximate cause of the accident. Petitioner, for his part, was driving while impaired, failed to yield the right of way, and hit the victims' car. Petitioner appears to concede that, if he was drunk and hit the victims' allegedly speeding car, he would be at fault to some extent:

> The mere fact someone is intoxicated does not mean they are at fault for every accident that occurs. If a person is drunk and crashes into someone, *obviously that alcohol played a part*. If someone hits them, it strains credulity to say that if they were not drunk, then this would not have occurred.

Doc. 34, p. 26 (emphasis supplied). Petitioner's concession that "obviously" alcohol would play a part in an accident wherein a drunk driver crashes into "someone" cuts against his argument

---

[9] After the crash, the victims' car's speedometer read 84 mph and Petitioner's speedometer read 12 mph. Doc. 28-1, pp. 2-3. Petitioner's father stated in an affidavit that Petitioner's original expert told him that the speedometer readings "had no value." Doc. 7-23, p. 54, ¶17. Respondent attached an article to his opposition brief called "Post-Collision Speedometer Readings and Vehicle Impact Speeds" which concludes that a post-crash speedometer reading is not always a reliable indicator of a vehicle's speed at impact. Doc. 35-1.

13

that, under Ohio law, the victims were the sole cause of the accident. Here, Petitioner was drunk and the evidence shows he crashed into the victims' car. Thus, by Petitioner's standard, the victims, even if their car was speeding, were not the "sole cause of the accident" and any contributory negligence on their part is no defense to vehicular homicide.

In sum, even crediting Meredith's opinion that the victims' car was travelling at 84 mph and Petitioner's car was traveling at 12 mph, those facts would not provide Petitioner with a defense to the charges that were brought against him.

### C. The Ohio Court of Appeals' decision was not unreasonable

As noted above, the Ohio Court of Appeals found Petitioner's post-conviction arguments to be without merit because the uncontroverted evidence showed that Petitioner operated his car under the influence of alcohol and cocaine and failed to yield the right of way. Meredith's reconstruction showing the victims' car hitting Petitioner's car is not persuasive evidence for the reasons explained above. Thus, after considering all the evidence, the undersigned finds that Petitioner cannot rebut the following: he drove a car under the influence of alcohol and drugs; he failed to yield the right of way despite a stop sign; he crashed into the victims' car (which had the right of way); and four people died.

To succeed on a Sixth Amendment claim, Petitioner must show that his counsels' representation fell below an objective standard of reasonableness and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59; *Strickland*, 466 U.S. 668. To succeed on his federal habeas claim, Petitioner must show that the Ohio Court of Appeals' decision denying him relief was contrary to or an unreasonable application of Supreme Court precedent. *Harrington*, 562 U.S. at 105. Petitioner has not and cannot meet these burdens.

14

First, Petitioner cannot show that his trial counsels' representation fell below an objective standard of reasonableness. In an ineffective assistance of counsel claim, a court must consider counsel's actions based on the facts and circumstances known to the attorney at the time, not in hindsight. *Strickland*, 466 U.S. at 680; *Premo v. Moore*, 562 U.S. 115, 126-127 (2011). Here, Petitioner's attorneys visited the scene of the accident and took photographs. They procured an expert, who reviewed the state's findings. It was not unreasonable to rely on this expert and the state's findings, given the uncontroverted evidence that Petitioner's car hit the victims' car; that the victims had the right of way and Petitioner had a stop sign; and that Petitioner was impaired at the time of the accident. "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Harrington*, 562 U.S. at 108 (citing *Strickland*, 466 U.S. at 691). "To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Id*. Indeed, the fact that Meredith's reconstruction videos are wholly unpersuasive to support Petitioner's apparent theory that the victims' car hit his car only further demonstrates how hiring a reconstruction expert would have been fruitless. *See also Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir. 2015) ("The Supreme Court has never reached the specific questions that the Tennessee courts answered in this case: how many experts must an attorney contact before proceeding without one, what kinds of outside advice can the attorney rely upon, and ultimately how hard must he try.").

Given the uncontroverted evidence described above, it was not an unreasonable tactical decision for defense counsel to advise Petitioner to take the plea agreement, admit to the stipulated facts, and "throw himself on the mercy of the court." Defense counsel stated that the state's prior plea offers were "unrealistic," including its first offer of "36 years of a 41 year maximum sentence" and that, based on their decade of experience "in criminal trial work, the

15

demeanor of the court, and the plea negotiations, [they believed] that the sentence [per the agreed-upon plea agreement] would likely fall within the 12-16 year range." Doc. 7-23, pp. 40-41, ¶¶ 15-19; p. 43, ¶¶ 16-20. This was not unreasonable. As the Supreme Court explained in *Premo v. Moore*,

> Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.
>
> These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). AEDPA compounds the imperative of judicial caution.
>
> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture," *Richter*, 562 U.S., at ——, 131 S.Ct. 770. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of Strickland. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

> Whether before, during, or after trial, when the Sixth Amendment applies, the formulation of the standard is the same: reasonable competence in representing the accused. *Strickland*, 466 U.S., at 688, 104 S.Ct. 2052. In applying and defining this standard substantial deference must be accorded to counsel's judgment. *Id.*, at 689, 104 S.Ct. 2052. But at different stages of the case that deference may be measured in different ways.
>
> In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take. It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived. The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.
>
> \*\*\*
>
> Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial or, as in this case, even before the prosecution decided on the charges. The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place....

562 U.S. 115, 124-126, 132 (2011).

Second, Petitioner cannot demonstrate prejudice; i.e., "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. As described above, nothing in Meredith's reconstruction videos or affidavit indicates that Petitioner, had he had access to such evidence, would not have pleaded guilty and would have insisted on going to trial. Petitioner admits that the victims' contributory negligence could only be a defense to vehicular homicide if it was the sole proximate cause of the accident and admits that he was impaired while driving. He offers no persuasive evidence that the victims' car hit his car and the evidence submitted supports the contrary conclusion, that his car hit the victims' car. He agrees that the victims had the right of way. It cannot be said that

17

there is a reasonable probability that, had trial counsel secured Meredith as an expert, Petitioner would have insisted on going to trial. See id.

In short, Petitioner does not describe how the Ohio Court of Appeals' decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. See Harrington, 562 U.S. at 103. Accordingly, "in light of the postconviction expert evidence concerning how the accident occurred, including the video reconstruction evidence mistakenly with[h]eld from the district court[,]" Petitioner's trial counsel was not ineffective. Doc. 22, Page ID# 1999-2000.

### D. An evidentiary hearing is not warranted

In his brief, Petitioner requests an evidentiary hearing and asserts that 28 U.S.C. § 2254(e)(2) does not prohibit him from obtaining an evidentiary hearing. Doc. 34, p. 23. Section 2254(e)(2) provides,

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Even if § 2254(e)(2) does not disqualify Petitioner from receiving an evidentiary hearing, "the fact that [a petitioner] is not disqualified from receiving an evidentiary hearing under § 2254(e)(2) does not entitle him to one." Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003).

"[A] habeas petitioner is generally entitled to such a hearing if he alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing . . . . bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Id*. (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir.2001)); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief .... if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

As explained above, Petitioner has not alleged sufficient grounds for relief; his allegations are conclusory; and they are refuted by the record.  See *id*.; *Bowling*, 344 F.3d at 512. Therefore, an evidentiary hearing is not warranted.  *Id*.

### IV. Conclusion

For the reasons stated above, the undersigned recommends the Court find that Petitioner's trial counsel was not ineffective.  The undersigned **DENIES** Petitioner's request for an evidentiary hearing (Doc. 34, p. 25).

Dated: May 10, 2016

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).