UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS R. SCHWIETERMAN, | ) | CASE NO. 3:11CV1203 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| KEVIN SMITH, Warden, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge Kathleen B. Burke. (Doc. No. 37 ["R&R"].) Represented by counsel, petitioner Nicholas R. Schwieterman ("petitioner" or "Schwieterman") filed objections. (Doc. No. 38 ["Obj."].) Respondent filed no objections of his own, but filed a response to petitioner's objections. (Doc. No. 39 ["Resp."].) Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters raised in the objections. For the reasons discussed below, petitioner's objections are overruled, the petition for writ of habeas corpus (as to the sole remaining ground) is denied, and this case is dismissed.

## I. BACKGROUND

This habeas corpus petition is before the Court on remand from the Sixth Circuit with directions "to determine whether the petitioner's plea counsel was ineffective in light of the post-conviction expert evidence concerning how the accident occurred, including the video reconstruction evidence mistakenly witheld [sic] from the district court." (Doc. No. 22

["Opinion"], at 1999-2000.)[1] A brief review of the factual and procedural history will be helpful for context.[2]

On March 15, 2008, at around 2:51 a.m., deputies from the Mercer County Sheriff's Office were dispatched to the scene of an injury collision at the intersection of County Road 716A and Brockman Road in Mercer County, Ohio. As reported by the officers, Schwieterman was driving a silver 1996 Pontiac Bonneville westbound on Brockman Road, while the other vehicle (a red 1995 Pontiac Grand Prix) was traveling northbound on County Road 716A. Schwieterman had a stop sign; the other vehicle did not. The investigating officers opined that Schwieterman ran the stop sign and "T-boned" the other car, killing its four occupants, including the son of one of the firefighters who responded to the scene. Blood and urine samples taken shortly after the accident revealed that Schwieterman was driving under the influence of cocaine, alcohol, and marijuana. The blood of the driver of the other car was taken post-mortem and showed only the presence of caffeine. Neither Schwieterman nor his lone passenger had any memory of the crash. No one in the other car survived, and there were no witnesses to the accident.

The police who responded to the scene of the accident recorded various measurements and documented the resting positions of the vehicles in a field near the intersection where the crash occurred; but their flawed attempts to recover digital data from the vehicles' "black boxes" resulted in destruction of that data, leaving only the speedometers of the two cars (whose readings had been photographed – Schwieterman's displaying 12 mph and the other showing 84 mph). (*See* photos, Doc. No. 28-1 at 2036 and 2035, respectively.)

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

[2] The factual review is extracted largely from the Sixth Circuit's remand opinion and the Stipulation of Facts on No Contest Plea (Return, Doc. No. 7-3, beginning at 1010).

Schwieterman was indicted on four counts of involuntary manslaughter and vehicular homicide, among other charges. Although attorneys visited the accident scene and observed it first-hand, they did not engage in any independent investigation, instead retaining an expert, Doug Heard, to review the state's reports. On the basis of Heard's review, Schwieterman's attorneys recommended that he "throw himself on the mercy of the court." He entered a plea of no contest and was sentenced to four consecutive six-year terms of incarceration.

Schwieterman exhausted his state court remedies, including a post-conviction petition wherein he submitted evidence produced by a new expert, Wilbur Meredith,[3] who arguably had a different view of how the accident occurred. (*See* Post-conviction Petition, Doc. No. 7-23, beginning at 1358.) The state trial court denied Schwieterman's petition (*see* Judgment Entry/Decision, Doc. No. 7-25), and that judgment was "affirmed" on appeal (*see* Judgment Entry/Opinion, Doc. No. 7-31), notwithstanding the state appellate court's conclusion that all the claims in the post-conviction petition were barred by *res judicata*.

With the assistance of counsel, Schwieterman then filed the instant petition for writ of habeas corpus, raising four grounds. This Court, on the recommendation of a magistrate judge, and over limited objections by petitioner, denied the petition in its entirety.

Schwieterman appealed, still represented by counsel, and the Sixth Circuit granted a certificate of appealability with respect to his fourth ground – that his plea counsel had been ineffective for failing to independently investigate the accident, as arguably evidenced by the conclusions of Mr. Meredith. On May 21, 2015, the court of appeals reversed solely with respect to this Court's denial of the ineffectiveness of counsel claim, and affirmed in all other respects.

---

[3] Mr. Meredith is now deceased. (*See* Obj. at 2182.)

3

Noting that this Court had been deprived of "important evidence" that required its "first full analysis" (Opinion at 1995), and "tak[ing] no position on the persuasiveness [of the evidence]" (*id.*), the Sixth Circuit remanded for further proceedings.[4] As identified by the court of appeals, the missing evidence consisted of "two sets of video reconstructions of the collision that [Meredith] created to illustrate his analysis." (*Id.*)

Following remand, the "video reconstructions of the collision" previously missing from this Court's record were supplied (*see* Doc. No. 29), and the Court permitted a substitution of color photographs (*see* Doc. No. 28-1) for the black-and-white photographs of the accident scene that were originally filed as part of the Return.

With the record complete, the Court referred the matter to Magistrate Judge Kathleen B. Burke for a report and recommendation on the sole remanded issue. The R&R was submitted, recommending denial of petitioner's claim of ineffective assistance of plea counsel.

## II. DISCUSSION

**A.     Standard of Review**

The legal standards applicable in this case are layered and must be carefully navigated as the Court conducts its review.

First, under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is

---

[4] The Sixth Circuit also held that the state appellate court's rejection of the claim on *res judicata* grounds was an "anomalous application of that procedural rule [that did not] trigger[ ] procedural default as an independent, adequate state ground for denying further review." (Opinion at 1996.)

4

dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.") (citations omitted). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Second, in conducting this de novo review of the specific objections, the Court must be further mindful of the deferential standards imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). As codified at 28 U.S.C. § 2254(d), AEDPA provides that, as to "any claim that was adjudicated on the merits in State court proceedings[,]" this Court may not grant habeas relief "unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The sole issue on remand is whether Schwieterman's plea counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Counsel is ineffective under the Sixth Amendment if objectively deficient performance prejudices a criminal defendant." (Opinion at 1998, citing *Strickland*, 466 U.S. at 687.) To be "deficient," an attorney's performance must fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The analysis is "highly deferential" with a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. As stated in *Strickland*: "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support

the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 690-91.

"Prejudice" to the defense in the context of plea counsel's performance is shown when there is "'a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial.'" (Opinion at 1998-99, quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)). "Thus, the proper standard for ineffective assistance through failure to investigate is merely the likelihood that investigation would have led to a different recommendation and decision regarding the plea." (*Id.* at 1999, citing *Dando v. Yukins*, 461 F.3d 791, 802 (6th Cir. 2006).) "This determination depends in part 'on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea' and the related inquiry of 'whether the evidence likely would have changed the outcome of the trial.'" *Dando*, 461 F.3d at 800.

The Supreme Court has also emphasized the "double dose of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA[.]" *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011) (citing *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)). In *Harrington*, the Court held that "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101. "Under AEDPA, . . . it is a necessary premise that the two questions are different." *Id.*

6

Otherwise, "the analysis would be no different than if . . . this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Id*.

The third, and final, complication of the layered review results from the fact that a state *trial* court denied Schwieterman's post-conviction claim of ineffective assistance of plea counsel, but the state *appellate* court declined review on the merits, asserting that the claim was barred by *res judicata*. Nonetheless, in the course of its discussion of Schwieterman's claim that the trial court erred in dismissing his petition without holding an evidentiary hearing, the appellate court noted that the new evidence would not have established "substantive grounds for relief[.]" (Doc. No. 7-31 at 1798.) The Sixth Circuit, reviewing this Court's initial denial of the federal habeas petition, concluded that "the state's irregular invocation of *res judicata* . . . [was] not an adequate independent state ground barring federal review." (Opinion at 1998.) The practical effect of that determination is that this Court is now applying AEDPA review to the state trial court's ruling, rather than that of the state appellate court. *Tapke v. Brunsman*, 565 F. App'x 430, 434 (6th Cir. 2014) ("The relevant state-court decision is the last state-court adjudication on the merits.") (citing *Greene v. Fisher*, 565 U.S. 34, 40, 132 S. Ct. 38, 181 L. Ed. 2d 336 (2011)).

**B.** *De Novo* **Review of Objections**

Petitioner explicitly states that he has no objections with respect to the relevant background set forth in the R&R or with respect to the legal standard identified by the R&R. (*See* Obj. at 2180.) Petitioner's only objections pertain to the "analysis section" of the R&R. (*Id*.)[5]

---

[5] Petitioner's objections are not clearly set forth, and the outline organization is particularly difficult to understand. The Court has, therefore, construed the objections as a whole quite broadly.

### 1. No Effort to Rebut a Presumption

The R&R mentioned, rather in passing, that "[t]he state Court of Appeals elected to consider all [p]etitioner's claims on appeal together[.]" (R&R at 2168.) Then, in footnote 4, the R&R states: "There is a presumption that AEDPA deference applies even when state courts do not discuss every claim separately." (*Id.*, citing *Johnson v. Williams*, 568 U.S. 289, 298, 133 S. Ct. 1088, 1094, 185 L. Ed. 2d 105 (2013).) The footnote continues: "Petitioner has made no effort to rebut *that* presumption." (*Id.*, emphasis added.)

Petitioner specifically "object[s] to the finding in the fourth footnote . . . that '[he] has made no effort to rebut that presumption.'" (Obj. at 2180.) He claims he "has spent the entire course of litigation attempting to rebut this presumption . . . by clear and convincing evidence." (*Id.*)

Petitioner has quoted the footnote completely out of context, but somewhat understandably, given its imprecise reference to a "presumption." The issue in the *Johnson* case cited by the R&R, was whether the state court had adjudicated a federal claim on the merits since it had not specifically discussed the claim when denying relief. The Court in *Johnson* stated that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be *presumed* that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Johnson*, 568 U.S. at 298 (emphasis added) (citation and internal quotation marks omitted).

Petitioner's "objection" is not actually challenging the *standard of deference* that the footnote inartfully sets forth. Rather, his argument is entirely based on a merits analysis aimed at

8

"rebut[ting] the presumption that the plea was entered into knowingly and voluntarily." (Obj. at 2181.)[6]

Petitioner has misapprehended the R&R's correct, if imprecise, statement of the law in footnote 4. Therefore, this Court need provide no further analysis with respect to this "objection," and it is overruled.

2. **Objection to Certain Assumptions Regarding the Reconstruction**

Petitioner next objects "to the magistrate making certain assumptions regarding the reconstruction." (Obj. at 2182.)[7] In particular, he challenges the conclusion that "the car was hit on the side." (*Id.*, citing R&R at 2170.) He disputes the conclusion that the reconstruction "does not take into account the terrain." (*Id.*)[8] He challenges the R&R's alleged "heavy reliance . . . on the plea[,]" asserting that he "has stated, under oath, that he would not have gone to trial had he known this information." (*Id.*)[9] He "objects to the characterization of his analysis of the causation in this matter[,]" (*Id.*), challenging the R&R's conclusion that he somehow concedes fault because he was driving while impaired, and further challenging any conclusion that the other car's speeding

---

[6] There is no need to rebut a presumption that petitioner entered a no contest plea knowingly and voluntarily because that precise issue is not before the Court on remand. Moreover, petitioner raised no such challenge in his habeas petition, and only mentioned it in passing in his traverse. (*See* Doc. No. 10 at 1899-1900.) The question here is not whether the no contest plea he accepted, based on the then-known facts, was knowing and voluntary. Rather, the question relates to "the quality of counsel's performance in advising a defendant whether to plead[.]" *Hill*, 474 U.S. at 57. The issue is whether counsel would have offered different advice *and* whether petitioner would have entered *any* plea if that joint decision had been informed at the time by Meredith's post-conviction opinion.

[7] It is not entirely clear to the Court that the R&R's in-depth analysis of the photographs and the reconstructions was required in order to conduct the *Strickland* analysis under AEDPA. The R&R's analysis is in the nature of a direct review – the very review that the Court in *Harrington* cautioned against.

[8] This was not a conclusion made by the R&R. Rather, in a footnote, the R&R pointed out that respondent made this argument.

[9] This is not so. Nowhere in the record has petitioner stated any such thing under oath.

9

had no effect on the outcome of events. Finally, he "would object to the contention that he has to have a valid, airtight defense in order to receive relief on his ineffectiveness claim." (*Id.*)

Even if individual "findings" included in the R&R could be properly challenged, the overall conclusion as to whether the video reconstructions were consistent with both the accident photos/police reports and the new expert's affidavit has not been challenged. The magistrate judge clearly was evaluating the video reconstructions of the accident in light of petitioner's theory in his opening brief – that the reconstructions show that the victim's car hit his, not the opposite. More importantly, the R&R notes that, even if the *reconstructions* are created in a way that would tend to support petitioner's theory, the expert's sworn *affidavit* contradicted that conclusion. The magistrate judge concluded that not only were the reconstructions inconsistent with her own view of the actual post-crash photographs and the police reports, they go well beyond the opinions in the expert's own affidavit.

Petitioner has not challenged this overall conclusion, choosing instead to challenge only discrete details that, by themselves (even taken together), are insufficient to discredit the R&R's conclusion.

To the extent petitioner objects to certain of the magistrate judge's "assumptions" regarding the reconstructions, that objection is overruled.

### 3. Objection Regarding Reasonableness of Attorney's Advice to Plead

The Sixth Circuit, in its remand order, framed the primary issue for this Court's review in the first instance as "whether the petitioner's plea counsel was ineffective in light of the post-conviction expert evidence concerning how the accident occurred, including the video reconstruction evidence[.]" (Opinion at 1999-2000.) Although that is the issue, since this Court sits in habeas, its review is not de novo, but is circumscribed by AEDPA; that is, this Court's role

is to determine whether the state trial court's decision was "contrary to" or an "unreasonable application of" the "clearly established" law of *Strickland*, or whether the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In the final section of his objections captioned "Ohio Court of Appeals decision was unreasonable," petitioner argues in full:

> Petitioner would object to the fact that it was reasonable for the attorneys to tell Petitioner to plead guilty. This plea included an appellate waiver, a stipulation of guilt, and no recommended sentence. The fact that that [sic] they so misjudged the trial court by their guess as to what the sentence would be should indicate to this court they had little or no idea what would happen in this case.

(*Id.* at 2183-84.) The Court broadly construes this as a challenge under the "contrary to/unreasonable application of" prong of § 2254(d).

The state trial court that denied Schwieterman's post-conviction petition on this ground reasoned, in relevant part, as follows:

> The petitioner's fourth and fifth claims are that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and made applicable to the State by the Fourteenth Amendment, first, by failing to properly investigate how the accident occurred; and second, for failing to give sound advice regarding the plea agreement. The record does not support his claim that trial counsel's advice impaired the knowing and voluntary nature of his no contest plea.
>
> A claim of ineffective assistance of counsel requires a two-prong analysis. As such, a counsel's performance will only be deemed ineffective if his performance (1) falls below an objective standard of reasonable representation and, as a result, (2) prejudice arises. *Strickland v. Washington* (1984), 466 U.S. 668; *State v. Bradley* (1989), 42 Ohio St. 3d 136. Furthermore, because of the difficulties inherent in making the evaluation, the court must indulge a strong presumption that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy. *State v. Bradley*, *supra*, at page 142.
>
> Petitioner's claims regarding his counsel's failure to fully investigate the collision by retaining the services of an accident reconstruction expert do not fall

11

below the objective standard of reasonable representation because the decision to rely on cross-examination of the prosecution's witness instead of producing a defense expert is trial strategy and does not in itself constitute ineffective assistance. In addition, both attorneys for the petitioner visited the accident scene and thereby observed the scene of the crime first-hand. Even if the counsel's performance was somehow ineffective, however, the petitioner carries the burden of demonstrating that there is a reasonable probability that the result of the proceeding would have been different had the errors not occurred. *Strickland*, *supra*, at page 694. As previously explained, even though petitioner's newly-retained counsel has obtained additional evidence from an independently hired accident reconstruction expert, that evidence does not contradict the facts as set forth in the stipulation of facts submitted at the change of plea hearing when the court adjudged the defendant guilty of the crimes for which he stands convicted. Therefore, the petitioner was not prejudiced by the actions of his counsel, even if trial counsel's assistance could be deemed ineffective.

The petitioner's own affidavit contains facts which are self-defeating to his claim that his no contest pleas were not knowingly, intelligently, and voluntarily made. It is only that he now believes that the accident may have happened in a different manner, i.e., the speeds of the subject vehicles may not have been consistent with the conclusions reached by the Mercer County Sheriff based upon that agency's investigation of the crash, that he now claims that he was not at fault or criminally responsible for the crash which killed the four victims. The speed of the vehicles were [sic] not facts contained in the stipulation upon which the court adjudged the petitioner to be guilty.

Nothing in the petitioner's affidavit attached as Exhibit F to his petition claims that he was not driving the vehicle that collided with the victims' vehicle; that he did not fail to yield the right-of-way at the intersection; that his blood did not contain one hundred thirty-four thousands (0.134) of one percent by weight per unit volume of alcohol, or that his urine did not contain 7990 ng/ml of cocaine and 48 ng/ml of THC within hours after the subject crash.

Further, petitioner's own sworn testimony in his affidavit is that he was prepared to throw himself on the mercy of the court. In fact, the record reflects that he knowingly, intelligently, and voluntarily entered his no contest pleas to the crimes for which he was convicted so that the matter could proceed to sentencing.

(Return, Doc. No. 7-25 at 1678-79.) The state appellate court, even though not ruling directly on the merits of this claim, having found it barred by *res judicata*, agreed that "Schwieterman did not establish 'substantive grounds for relief[.]'" (Return, Doc. No. 7-31 at 1798.)[10]

The state trial court properly applied the two-pronged analysis required by *Strickland*, sufficiently explaining its reasoning under each prong. Although the state court did not cite *Hill*, *supra*, it did assess whether there was "a reasonable probability that the result of the proceeding would have been different had the errors not occurred." (*Id.*) This satisfies the *Hill* analysis. The state court decision regarding Schwieterman's claim of ineffective assistance was neither "contrary to" nor "an unreasonable application of" the controlling federal law in *Strickland* and *Hill*. *See also Virginia v. LeBlanc*, -- U.S. --, 137 S. Ct. 1726, 1728, 198 L. Ed. 2d 186 (2017) ("In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'") (quoting *Woods v. Donald*, 575 U.S. --, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015)).

---

[10] In reviewing this trial court decision, the state appellate court commented as follows:

> . . . even if evidence was destroyed that established the victim was traveling in excess of eighty m.p.h., and even if trial counsel would have hired an expert to establish that the accident did not occur in the manner as declared by the State, that evidence would not alter the fact that Schwieterman's failure to yield the right of way at the stop sign and his operation of the vehicle while under the influence of alcohol and cocaine proximately caused the deaths of the victims. It is well established that a decedent's contributory negligence is not a defense to a charge of vehicular homicide unless it is the sole proximate cause of the accident, *State v. Langenkamp*, 137 Ohio App. 3d 614, 620, 2000-Ohio-1831; *State v. McGraw*, 3d Dist. No. 17-88-2, 1989 WL 153589; *State v. Dailey*, 5th Dist. No. 2006-CA-0012, 2007-Ohio-2544, ¶ 32, and, clearly, the speed of the victim's vehicle was not the sole proximate cause of this accident.
>
> Finally, Schwieterman's claim of innocence also cannot stand. This claim is based upon his assertion that the accident resulted from the victim operating his vehicle well in excess of the speed limit, and his view of the victims' vehicle being obscured by a row of trees. However, these contentions do not alter the fact that, at a minimum, Schwieterman's contributory negligence in failing to yield at the stop sign and in operating his vehicle while under the influence of alcohol and cocaine, both of which he stipulated to in his plea, proximately caused the deaths of these four young men. Any contributory negligence on the part of the victim was not the sole proximate cause of the accident, and, therefore, Schwieterman cannot be innocent.

(Return, Doc. No. 7-31 at 1798-99.)

Although petitioner does not appear to raise a challenge under the "unreasonable determination of the facts" prong of § 2254(d), if he had, this Court would also reject that challenge. The state's theory, based on the police investigation, was that Schwieterman (who was driving under the influence of alcohol, cocaine, and marijuana) was speeding, ran the stop sign, and broadsided the other vehicle.[11] But Meredith[12] opined in his affidavit, "beyond any reasonable doubt and with engineering certainty, that this accident was not the result of a 'T-Bone' type crash as opined by the investigating police officers[,]" but rather a crash angle of approximately 45 degrees. (Meredith Aff. ¶ 14 [Doc. No. 7-23 at 1394].)[13] Meredith further opined, "with a reasonable degree of engineering certainty that it is not possible to prove beyond a reasonable doubt that Mr. Schwieterman did not stop at the stop sign as charged by the investigating police officers. The speed of his car at impact was too low to negate the possibility that he did stop at the stop sign." (*Id.* ¶ 18.) Finally, Meredith opined, "with a reasonable degree of engineering certainty, that the speedometers in both vehicles were stuck with their respective speed indicators at the

---

[11] There are Police Reports in the record, attached to Schwieterman's state post-conviction petition. (*See* Ex. N., located in Doc. No. 7-23 beginning at 1483.) The stipulated facts filed when Schwieterman entered his plea provide the same story. (*See* Ex. 3, Doc. No. 7-3, beginning at 1010.)

[12] There is no reason to doubt the expert credentials of Meredith (*see* Return, Doc. No. 7-23 at 1393-95), and respondent raises no such challenge.

[13] Meredith provided three reasons for this conclusion:

> 15) The first reason is because the Principle Direction of Force acting through the center of gravity of both vehicles causing the evidential damage to both of these vehicles indicates crash angle between the vehicles to be at approximately a 45-degree angle.
>
> 16) The second reason is because the resulting trajectories of the two vehicles after impact is consistent with the evidence as recorded by the police at the accident scene.
>
> 17) The third reason is because the opined estimate of the speed of the vehicle driven by Mr. Schwieterman is not consistent with a "high speed" of his vehicle at impact. It is consistent with the speed of 12-MPH as evidence by the stuck speedometer on his car.

(Meredith Aff. at 1394.)

impact speeds in each. . . . . These speeds are consistent with the reconstruction calculations by the writer and inconsistent with the police version of the accident[.]" (*Id.* ¶ 20 [p. 1395].)

Petitioner argues that his plea counsel was ineffective for failing to investigate in a manner that would have provided him with, and advised him regarding, Meredith's expert opinion. But, the new information supplied by Meredith's analysis would not have refuted any of the most damaging facts, and it would not be unreasonable for counsel to have concluded that the facts posed a significant risk to Schwieterman if he were to go to trial rather than plead. Meredith's opinion, had it been available, would not have diminished this risk because it would not in any way establish that the *victims'* vehicle was the "sole proximate cause" of the accident. *Prince v. State*, 12 Ohio App. 347, 351, 352 (Ohio Ct. App. 1919) (under Ohio law, the alleged contributory negligence of another is no defense, *unless* that contributory negligence was "the sole proximate cause of the accident").

Although defense counsel has a duty to investigate, the Court in *Strickland* explained that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91; *see also*, n.5, *supra*. Therefore, even if counsel had had the benefit of Meredith's opinions, it is not unreasonable to conclude that he would have evaluated the risk of going to trial on these damaging facts and would still have advised Schwieterman to plead no contest. Further, petitioner himself submitted an affidavit along with his state post-conviction petition. (*See* Ex. E, Doc. No. 7-23, beginning at 1404.) Although he asserts that the accident happened differently than the police reports and his plea expert had opined, he points to nothing in the record to support his assertions, and the Meredith affidavit does not support the various assertions he now makes. Even more notably, nowhere in his affidavit does Schwieterman represent that, had he had the benefit

15

of Meredith's affidavit and accident reconstructions, he would not have entered a plea of no contest, but would have insisted upon going to trial.[14]

Petitioner cannot establish that "investigation would have led to a different recommendation and decision regarding the plea." (Opinion at 1999.)

Therefore, to the extent this objection attempts to challenge the effectiveness of Schwieterman's plea counsel, it is overruled.

### 4. Right to Evidentiary Hearing

Petitioner claims he is entitled to an evidentiary hearing, although he does not identify what evidence would, or should, be presented. Section 2254(e)(2) "imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing." *Cullen v. Pinholster*, 563 U.S. 170, 185, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011). In *Cullen*, a majority of the Supreme Court held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. at 181.

In this case, there is no need for discovery and/or an evidentiary hearing because all the evidence petitioner would rely upon is already in the record. Having resolved all of the issues on the state court record as it existed when the issues were decided by the state courts, there is no need to try to carve out any exception to *Cullen*'s holding in order to permit discovery and/or an evidentiary hearing in this case.

Therefore, this objection is overruled.

---

[14] In the objections to the R&R, petitioner represents that he "has stated, *under oath*, that he would not have gone to trial had he known this information." (Obj. at 2183, emphasis added.) The Court has found no such sworn statement in this record, and this bald assertion by petitioner in his objections provided no record citation.

## III. CONCLUSION

For the reasons discussed above, petitioner's objections to the R&R are overruled. The petition for writ of habeas corpus is denied as to the sole remaining claim, and the case is dismissed. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: August 2, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**